119 T.C. No. 1

UNITED STATES TAX COURT

JAMES F. DAVIS AND DOROTHY A. DAVIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6389-01.                    Filed July 3, 2002.

        Ps assigned to S their right to receive a portion
of each of certain future annual lottery payments in
exchange for a lump-sum payment to them by S of
$1,040,000.

        <u>Held</u>:  S paid Ps a lump-sum amount for the right
to receive certain future ordinary income.  <u>Held</u>,
<u>further</u>, Ps' right to receive certain future annual
lottery payments does not constitute a capital asset
within the meaning of sec. 1221, I.R.C.  <u>Held</u>, <u>further</u>,
the $1,040,000 that Ps received from S is ordinary
income.

<u>Donald J. Gary, Jr.</u>, for petitioners.

<u>Thomas J. Fernandez</u>, for respondent.

OPINION

CHIECHI, Judge: Respondent determined a deficiency in petitioners' Federal income tax (tax) for 1997 in the amount of $210,166.

We must determine whether the amount that petitioners received in exchange for the assignment of their right to receive a portion of certain future annual lottery payments is ordinary income or capital gain.[1] We hold that that amount is ordinary income.

Background

This case was submitted fully stipulated. The facts that have been stipulated are so found except as stated herein.

Petitioners resided in Lake Arrowhead, California, at the time they filed the petition.

On July 10, 1991, petitioner James F. Davis (Mr. Davis) won $13,580,000 in the California State Lottery's On-Line LOTTO game (lottery). Pursuant to certain rules and regulations governing

---

[1]Petitioners paid and claimed as basis $7,009 in legal fees in connection with the assignment in question (assignment cost). In the notice of deficiency (notice) issued to petitioners for their taxable year 1997, respondent disallowed the assignment cost as basis but determined that cost to be a miscellaneous itemized deduction. In the petition, petitioners contested respondent's determination in the notice with respect to the assignment cost. On brief, petitioners make no arguments or contentions with respect to that cost. We conclude that petitioners have abandoned contesting respondent's determination in the notice with respect to the assignment cost. See Rybak v. Commissioner, 91 T.C. 524, 566 n.19 (1988).

the California State Lottery (CSL) in effect during 1991, Mr. Davis became entitled upon winning the lottery to receive the $13,580,000 in 20 equal annual payments of $679,000 (annual lottery payments), less certain tax withholding. At the time that Mr. Davis won the lottery, CSL did not offer to any lottery winner the option to elect to receive a single lump-sum payment of the lottery prize.[2]

On December 13, 1991, CSL sent Mr. Davis a letter which stated, inter alia:

> This letter certifies that on July 10, 1991 you won $13,580,000 [sic] the California State Lottery's On-Line LOTTO game. You have already received your first payment of $679,000, less 20% for Federal tax withhold-ing. In addition, you will receive nineteen (19) subsequent annual payments of $679,000 each, as near as possible to the anniversary of the day on which you won your prize, $13,580,000. Please maintain this letter for your permanent record.

In accordance with Internal Revenue Service regula-

_____

[2]The parties stipulated that both petitioners won the lot-tery. That stipulation is not accurate. On July 10, 1991, Mr. Davis won the lottery, and sometime thereafter he assigned the right to receive the annual lottery payments to himself and his spouse, petitioner Dorothy A. Davis (Ms. Davis), as cotrustees of James and Dorothy Davis Family Trust dated Feb. 6, 1990 (Davis Family Trust). Mr. Davis and Ms. Davis took all subsequent actions with respect to the annual lottery payments discussed herein in their capacity as cotrustees of that trust. They apparently have taken and continue to take the position, which respondent does not dispute, that all income of Davis Family Trust is includable in their income. Thus, as discussed below: (1) Petitioners reported in their tax return for the taxable year 1997 that they received (a) the $1,040,000 payment at issue and (b) the $514,000 annual lottery payment that they were entitled to receive for that year, and (2) respondent determined that petitioners have a deficiency for that year.

tions, all payments are subject to appropriate Federal tax withholdings. Deductions authorized by California statutes, if such are appropriate, will also be made.

Your rights under this agreement cannot be assigned, but all remaining rights do become a part of your estate. This document is not negotiable.

On June 16, 1997, at a time when petitioners[3] were entitled to receive 14 future annual lottery payments of $679,000 (less certain tax withholding) during the years 1997 through 2010, petitioners and Singer Asset Finance Company, LLC (Singer), entered into an agreement pursuant to which, in exchange for a lump-sum payment to petitioners by Singer of $1,040,000, petitioners assigned to Singer their right to receive a portion (i.e., $165,000 less certain tax withholding) of each of 11 of the future annual lottery payments that they were entitled to receive during the years 1997 through 2007. (We shall refer to the foregoing assignment as petitioners' assignment.) Petitioners thus assigned to Singer the portions of those future annual lottery payments at a discount of $775,000 (i.e., $1,815,000 (total of 11 future annual payments of $165,000) less $1,040,000 (total of the amount that Singer paid to petitioners)). After petitioners' assignment, petitioners were entitled to receive from CSL for each of the years 1997 through 2007 only $514,000

_____

[3]For convenience, and consistent with the parties' stipulations, we shall hereinafter refer to "petitioners", and not to "petitioners as cotrustees of Davis Family Trust". See discussion supra note 2.

(less certain tax withholding) of each of the $679,000 future annual lottery payments (less certain tax withholding) to which they had been entitled prior to that assignment. After that assignment, CSL was to pay the balance of each of those future annual lottery payments (i.e., $165,000 (less certain tax withholding)) to Singer.

At all relevant times, the laws of the State of California precluded a lottery winner from assigning such person's right to receive future annual lottery payments without obtaining California Superior Court approval. On or about July 22, 1997, petitioners and Singer filed with the California Superior Court for the County of Sacramento (Sacramento County Superior Court) a joint petition "FOR AN ORDER APPROVING VOLUNTARY ASSIGNMENT OF LOTTERY WINNINGS". On August 1, 1997, Sacramento County Superior Court issued an order approving petitioners' assignment.

Singer issued to petitioners Form 1099-B, Proceeds From Broker and Barter Exchange Transactions (Form 1099-B), for 1997. That Form 1099-B showed gross proceeds from the sale of "Stocks, bonds, etc." in the amount of $1,040,000.

CSL issued to petitioners Form W-2G, Certain Gambling Winnings (Form W-2G), for 1997. That Form W-2G showed "Gross winnings" from "STATE LOTTERY" of $514,000 and tax withheld of $143,920.

On March 13, 1998, petitioners signed Form 1040, U.S.

Individual Income Tax Return, for their taxable year 1997 (petitioners' 1997 joint return). In petitioners' 1997 joint return, they reported petitioners' assignment as a sale of a capital asset held for more than 1 year, a sale price of $1,040,000, a cost basis of $7,009, and long-term capital gain of $1,032,991. In that return, petitioners also reported as ordinary income the $514,000 payment that they received in 1997 from CSL.

In the notice that respondent issued to petitioners with respect to their taxable year 1997, respondent determined, inter alia, the following:

> b) It is determined that you [petitioners] received the amount of $1,040,000.00 from Singer Asset Finance Company, for the tax year ended December 31, 1997, in payment of assignment of rights to future lottery payments from the State of California. This amount is determined to be ordinary income because rights to future annual lottery payments do not meet the definition of a capital asset according to the provisions of the Internal Revenue Code. Therefore, income is increased $1,040,000.00 for the year 1997.

## Discussion

The parties agree that an amount received as a lottery prize constitutes ordinary income. The parties' dispute is over whether the $1,040,000 that petitioners received in exchange for petitioners' assignment is ordinary income or capital gain.[4]

---

[4]Our resolution of the issue presented does not depend on who has the burden of proof in this case.

On brief, respondent represents that an issue similar to the one presented here is pending in certain other courts. See
(continued...)

Resolution of that dispute depends on whether petitioners' right to receive future annual lottery payments constitutes a capital asset within the meaning of section 1221.[5]

Section 1221 defines the term "capital asset" as follows:

SEC. 1221.  CAPITAL ASSET DEFINED.

> For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include--
>
> > (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;
> >
> > (2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in his trade or business;
> >
> > (3) a copyright, a literary, musical, or artistic composition, a letter or memorandum, or similar property, held by--
> >
> > > (A) a taxpayer whose personal efforts created such property,
> > >
> > > (B) in the case of a letter, memorandum, or similar property, a taxpayer for whom such property was prepared or produced, or

---

[4](...continued)
United States v. Maginnis, No. 01-368-KI (D. Or. May 28, 2002) (holding that the amount that the taxpayer received in exchange for the taxpayer's assignment to a third party of his right to receive certain future annual lottery payments is ordinary income).

[5]All section references are to the Internal Revenue Code in effect for the year at issue.

      (C) a taxpayer in whose hands the basis of such property is determined, for purposes of determining gain from a sale or exchange, in whole or part by reference to the basis of such property in the hands of a taxpayer described in subparagraph (A) or (B);

      (4) accounts or notes receivable acquired in the ordinary course of trade or business for services rendered or from the sale of property described in paragraph (1);

      (5) a publication of the United States Government (including the Congressional Record) which is received from the United States Government or any agency thereof, other than by purchase at the price at which it is offered for sale to the public, and which is held by--

          (A) a taxpayer who so received such publication, or

          (B) a taxpayer in whose hands the basis of such publication is determined, for purposes of determining gain from a sale or exchange, in whole or in part by reference to the basis of such publication in the hands of a taxpayer described in subparagraph (A).

Petitioners[6] contend that their right to receive future annual lottery payments constitutes property held by them and that such property meets the definition of the term "capital asset" in section 1221. Respondent acknowledges that petitioners' right to receive future annual lottery payments is property in the ordinary sense of the word. However, respondent contends that such right does not qualify as a capital asset within the meaning of section 1221. According to respondent, the $1,040,000

---

[6]The parties agree that at all relevant times petitioners were cash basis taxpayers.

that petitioners received from Singer constitutes ordinary income because petitioners received that amount in exchange for their future right to receive ordinary income.

In support of petitioners' position that the $1,040,000 that they received from Singer constitutes capital gain, petitioners rely on Ark. Best Corp. v. Commissioner, 485 U.S. 212 (1988). In support of respondent's position that that amount constitutes ordinary income, respondent relies on the principle established in the following cases: Hort v. Commissioner, 313 U.S. 28 (1941); Commissioner v. P.G. Lake, Inc., 356 U.S. 260 (1958); Commissioner v. Gillette Motor Transp., Inc., 364 U.S. 130 (1960); and United States v. Midland-Ross Corp., 381 U.S. 54 (1965).

Petitioners concede that, before the Supreme Court of the United States (Supreme Court) decided Ark. Best Corp. v. Commissioner, supra, the line of cases on which respondent relies would have precluded characterizing petitioners' right to receive future annual lottery payments as a capital asset within the meaning of section 1221. However, according to petitioners, Ark. Best Corp. effectively overruled that line of cases and requires the result in the instant case that they advocate. Respondent disputes petitioners' reading of Ark. Best Corp. v. Commissioner, supra.

We agree with respondent's reading of Ark. Best Corp. v.

Commissioner, supra.  In fact, we have previously concluded that Ark. Best Corp. in no way affected the viability of the principle established in the line of cases on which respondent relies.  See Gladden v. Commissioner, 112 T.C. 209, 221 (1999), revd. on another issue 262 F.3d 851 (9th Cir. 2001); FNMA v. Commissioner, 100 T.C. 541, 573 n.30 (1993).[7]  We based that conclusion on footnote 5 of the Supreme Court's opinion in Ark. Best Corp., which states:

> Petitioner [Ark. Best Corp.] mistakenly relies on cases in which this Court, in narrowly applying the general definition of "capital asset," has "construed 'capital asset' to exclude property representing income items or accretions to the value of a capital asset themselves properly attributable to income," even though these items are property in the broad sense of the word.  United States v. Midland-Ross Corp., 381 U.S. 54, 57 (1965).  See, e.g., Commissioner v. Gillette Motor Co., 364 U.S. 130 (1960) ("capital asset" does not include compensation awarded taxpayer that represented fair rental value of its facilities); Commissioner v. P.G. Lake, Inc., 356 U.S. 260 (1958) ("capital asset" does not include proceeds from sale of oil payment rights); Hort v. Commissioner, 313 U.S. 28 (1941) ("capital asset" does not include payment to lessor for cancellation of unexpired portion of a lease).  This line of cases, based on the premise that § 1221 "property" does not include claims or rights to ordinary income, has no application in the present context.  Petitioner sold capital stock, not a claim to ordinary income.  [Ark. Best Corp. v. Commissioner, supra at 217 n.5.]

We have reviewed Hort v. Commissioner, supra; Commissioner v. P.G. Lake, Inc., supra; Commissioner v. Gillette Motor

---

[7]See also Wachner v. Commissioner, T.C. Memo. 1995-88; Clark v. Commissioner, T.C. Memo. 1994-278.

Transp., Inc., supra; and United States v. Midland-Ross Corp.,

supra, and certain of their progeny[8] on which respondent relies.

As the Supreme Court stated in Commissioner v. Gillette Motor

Transp., Inc., supra at 134:

> While a capital asset is defined in § 117(a)(1)
> [of the Internal Revenue Code of 1939] as "property
> held by the taxpayer," it is evident that not every-
> thing which can be called property in the ordinary
> sense and which is outside the statutory exclusions
> qualifies as a capital asset. * * *

Petitioners assigned to Singer their right to receive a

portion of certain future annual lottery payments.  In exchange

for petitioners' assignment, petitioners received the discounted

value (i.e., $1,040,000) of certain ordinary income which they

otherwise would have received during the years 1997 through 2007.

We hold that Singer paid petitioners $1,040,000 for the right to

receive such future ordinary income, and not for an increase in

the value of income-producing property.[9]  We further hold that

---

[8]E.g., Furrer v. Commissioner, 566 F.2d 1115 (9th Cir.
1977), affg. T.C. Memo. 1976-331; Vaaler v. United States, 454
F.2d 1120 (8th Cir. 1972); United States v. Dresser Indus., Inc.,
324 F.2d 56 (5th Cir. 1963).

[9]It is well established that the purpose for capital-gains
treatment is

> to afford capital-gains treatment only in situations
> typically involving the realization of appreciation in
> value accrued over a substantial period of time, and
> thus to ameliorate the hardship of taxation of the
> entire gain in one year. * * *  [Commissioner v.
> Gillette Motor Transp., Inc., 364 U.S. 130, 134 (1960)
> (citing Burnet v. Harmel, 287 U.S. 103, 106 (1932)).]

petitioners' right to receive future annual lottery payments does not constitute a capital asset within the meaning of section 1221 and that the $1,040,000 that petitioners received from Singer is ordinary income, and not capital gain. See United States v. Midland-Ross Corp., 381 U.S. at 57-58; Commissioner v. Gillette Motor Transp., Inc., 364 U.S. at 134-135; Commissioner v. P.G. Lake, Inc., 356 U.S. at 265-267; Hort v. Commissioner, 313 U.S. at 31.

We have considered all of petitioners' arguments and contentions that are not discussed herein, and we find them to be without merit and/or irrelevant.

To reflect the foregoing,

Decision will be entered for respondent.