T.C. Memo. 2003-155

UNITED STATES TAX COURT

DAVID K. AND ELIZABETH SIMPSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 191-02.                    Filed May 28, 2003.

<u>Kevin G. Staker</u>, for petitioners.

<u>Linette B. Angelastro</u>, for respondent.

MEMORANDUM OPINION

GOEKE, <u>Judge</u>:  Respondent determined a deficiency in
petitioners' 1998 Federal income tax of $879,060.  The sole issue
for decision is whether a lump-sum amount received in exchange
for the assignment of the right to receive a portion of certain
future annual lottery payments is ordinary income or capital
gain.

Background

The parties submitted this case fully stipulated pursuant to Rule 122.[1]  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioners, Mr. Simpson and Mrs. Simpson, are husband and wife and resided in Santa Barbara, California, at the time they filed their petition.

On April 29, 1992, Mr. Simpson won a California lottery prize of $15,740,000.  Under California law at that time, the prize was payable in 20 annual installments of $787,000, with the first installment payable on April 29, 1992, and subsequent installments payable each year on April 29 through the year 2011.  On July 20, 1992, Mr. Simpson assigned his California lottery prize to the Simpson Trust.[2]

On April 20, 1997, Mr. Simpson, in his capacity as trustee of the Simpson Trust, assigned a portion of the lottery prize to Singer Asset Finance Company, LLC (Singer).  Under the assignment agreement, all rights to $140,000 of 12 annual lottery payments

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The evidence in the record indicates that Mr. Simpson was the sole trustee of the Simpson Trust and that he took all subsequent actions with respect to the annual lottery payments discussed herein in his capacity as trustee.  Petitioners apparently have taken and continue to take the position, which respondent does not dispute, that all income of the Simpson Trust is includable in their income.

commencing April 20, 1997, through and including April 20, 2008, were assigned to Singer.[3]  The assignment left the Simpson Trust with the right to receive future annual lottery payments of $647,000 through the year 2008.  The right to receive the 2009, 2010, and 2011 payments was not assigned.

On June 2, 1998, Mr. Simpson, as trustee of the Simpson Trust, entered into another assignment agreement with Singer.  Pursuant to this agreement, the right to receive the remaining $647,000 of 10 annual lottery payments for the years 1999 through 2008 was assigned to Singer in exchange for a lump-sum payment of $4,485,000.

At all relevant times, the laws of the State of California precluded a lottery winner from assigning the right to receive future annual lottery payments without obtaining California Superior Court approval.  On June 26, 1998, the Simpson Trust and Singer filed with the California Superior Court for the County of Sacramento (Sacramento County Superior Court) a joint petition for an order approving voluntary assignment of lottery winnings.  On July 7, 1998, the Sacramento County Superior Court issued an order approving the assignment.

Singer issued to Mr. Simpson a Form 1099-B, Proceeds From Broker and Barter Exchange Transactions, for 1998.  The Form

---

[3]The evidence in the record does not reflect the consideration paid by Singer under this assignment agreement.

1099-B showed proceeds from the sale of "Stocks, bonds, etc." of $4,485,000.

On April 15, 1999, petitioners jointly filed Form 1040, U.S. Individual Income Tax Return, for 1998. On Schedule D, Capital Gains and Losses, petitioners reported the assignment of the 10 future annual lottery payments of $647,000 to Singer as a sale of a capital asset held more than 1 year. Petitioners reported a sales price of $4,485,000, a cost or other basis of $0, and a long-term capital gain of $4,485,000.

On January 7, 2002, respondent issued a notice of deficiency to petitioners for the year 1998. In the notice, respondent determined:

> It has been determined that the sale of rights to future annual lottery payments reported as a long term capital gain on Schedule D in tax year 1998 do not meet the definition of a capital asset. Accordingly, the net income reported of $4,485,000.00 has been reclassified as ordinary income.

Petitioners timely filed a petition to this Court seeking a redetermination.

## Discussion

The parties dispute whether the $4,485,000 received in exchange for the assignment of future lottery payments is ordinary income or capital gain.[4] Resolution of this issue depends on whether the right to receive future annual lottery

---

[4]Our resolution of the issue presented does not depend on who has the burden of proof in this case.

payments constitutes a capital asset within the meaning of section 1221.

Section 1221 provides the following definition of the term "capital asset":

SEC. 1221.  CAPITAL ASSET DEFINED.

For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include--

(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

(2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in his trade or business;

(3) a copyright, a literary, musical, or artistic composition, a letter or memorandum, or similar property, held by--

(A) a taxpayer whose personal efforts created such property,

(B) in the case of a letter, memorandum, or similar property, a taxpayer for whom such property was prepared or produced, or

(C) a taxpayer in whose hands the basis of such property is determined, for purposes of determining gain from a sale or exchange, in whole or part by reference to the basis of such property in the hands of a taxpayer described in subparagraph (A) or (B);

(4) accounts or notes receivable acquired in the ordinary course of trade or

business for services rendered or from the
sale of property described in paragraph (1);

(5) a publication of the United States
Government (including the Congressional Record)
which is received from the United States
Government or any agency thereof, other than by
purchase at the price at which it is offered for
sale to the public, and which is held by--

(A) a taxpayer who so received such
publication, or

(B) a taxpayer in whose hands the basis
of such publication is determined, for
purposes of determining gain from a sale or
exchange, in whole or in part by reference to
the basis of such publication in the hands of
a taxpayer described in subparagraph (A).

Petitioners argue that (1) the sale of a lottery award is the

sale of a capital asset, (2) a lottery ticket falls within the

definition of a capital asset, (3) assets similar to lottery

tickets are classified as capital assets, and (4) recent court

decisions regarding the sale of lottery proceeds are incorrect.[5]

---

[5]Although petitioners' primary argument is that the right to
receive future annual lottery payments is a capital asset, it
appears that they are also arguing that the winning lottery
ticket is a capital asset and that somehow the lump-sum payment
received from Singer is therefore capital gain.  Petitioners did
not assign the lottery ticket to Singer; rather, they
relinquished the lottery ticket to the State of California in
order to claim the lottery prize and secure the right to the 20
annual installments of $787,000.  The right to a portion of some
of the annual lottery payments, not the actual lottery ticket,
was subsequently assigned to Singer in exchange for the lump-sum
payment of $4,485,000.  It is this right to future lottery
payments that is the focus of our inquiry, not the actual lottery
ticket.  See Johns v. Commissioner, T.C. Memo. 2003-140.

This is not an issue of first impression. In <u>Davis v. Commissioner</u>, 119 T.C. 1 (2002), we decided the same issue under almost identical factual circumstances. The taxpayers in that case also won a California State lottery prize and subsequently assigned a portion of future annual lottery payments to Singer in exchange for a lump-sum payment. <u>Id.</u> at 3. We held that the right to receive such payments does not constitute a capital asset within the meaning of section 1221. <u>Id.</u> at 7. Petitioners are aware of our holding in <u>Davis</u>; however, they contend that case was incorrectly decided.

In <u>Davis</u>, we thoroughly analyzed section 1221 and relevant caselaw interpreting the statute. We recently relied on and followed our analysis in <u>Davis</u>. See <u>Johns v. Commissioner</u>, T.C. Memo. 2003-140; <u>Boehme v. Commissioner</u>, T.C. Memo. 2003-81.[6] No purpose would be served by repeating the analysis that led us to hold in <u>Davis</u> that the right to receive future annual lottery payments does not constitute a capital asset.[7]

---

[6]Accord <u>United States v. Maginnis</u>, 89 AFTR 2d 2002-3028, 2002-2 USTC par. 50,494 (D. Or. 2002) (holding that the amount that the taxpayer received in exchange for the taxpayer's assignment to a third party of his right to receive certain future annual lottery payments is ordinary income).

[7]On brief, petitioners imply that the right to receive future annual lottery payments is analogous to currency contracts, stocks, bonds, and options. Unlike the situations cited by petitioners, in this instance petitioners received the lump-sum payment as a substitute for the right to receive ordinary income.

The doctrine of stare decisis generally requires that we follow the holding of a previously decided case, absent special justification. Sec. State Bank v. Commissioner, 111 T.C. 210, 213-214 (1998), affd. 214 F.3d 1254 (10th Cir. 2000). After reviewing petitioners' arguments in support of their position that the right to receive future annual lottery payments constitutes a capital asset, we find nothing therein that would cause us to refrain from applying the doctrine of stare decisis. Accordingly, we rely on the legal analysis in Davis and hold that (1) the right in this case to receive the future lottery payments does not constitute a capital asset within the meaning of section 1221, and (2) the lump-sum payment of $4,485,000 received from Singer in exchange for that right is ordinary income.

Decision will be entered

for respondent.