T.C. Memo. 2004-216

UNITED STATES TAX COURT

GEORGE AND ANGELINE LATTERA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4269-03.               Filed September 23, 2004.

<u>Mark E. Cedrone</u>, for petitioners.

<u>Carol Lynn E. Moran</u>, for respondent.

MEMORANDUM OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a deficiency of
$660,784 in petitioners' 1999 Federal income tax.[1]  The sole
issue for decision is whether a lump-sum payment received in
exchange for the assignment of the right to receive future annual
lottery payments is ordinary income or capital gain.

---

[1]  All amounts are rounded to the nearest dollar.

Background

The parties submitted this case fully stipulated pursuant to Rule 122.[2]  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time they filed their petition, petitioners resided in Philadelphia, Pennsylvania.

On June 12, 1991, petitioners won $9,595,326 from the Pennsylvania Lottery.  Petitioners did not have the option of receiving the prize in a single lump-sum payment.  The prize was payable in 26 annual installments of $369,051.  Petitioners purchased the winning lottery ticket for $1.

On August 12, 1999, petitioners and Singer Asset Finance Co., L.L.C. (Singer) entered into a "Sale Agreement for Lottery Prize Payments of George M. Lattera and Angeline Lattera" and "Terms Rider to Sale Agreement for Lottery Prize Payments of George M. Lattera and Angeline Lattera" (the sale agreements), that assigned petitioners' rights, title, and interest in the lottery prize to Singer.  Under the terms of the sale agreements, the remaining 17 annual payments of $369,051, payable on or about June 12, 2000 through 2016, were sold to Singer for $3,372,342.

---

[2] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the year in issue.

Under Pennsylvania State law, petitioners were required to obtain court approval before they could transfer their rights to receive future lottery payments. On August 27, 1999, petitioners obtained the requisite approval from the Court of Common Pleas of Dauphin County.

Singer issued petitioners a Form 1099-B, Proceeds From Broker and Barter Exchange Transactions, for 1999. The Form 1099-B listed proceeds from the sale of "Stocks, bonds, etc." of $3,372,342.

Petitioners jointly filed a Form 1040, U.S. Individual Income Tax Return, for 1999. On Schedule D, Capital Gains and Losses, petitioners reported the assignment of the 17 future annual lottery payments of $369,051 to Singer as a sale of a capital asset held for more than 1 year. Petitioners reported a sale price of $3,372,342, a cost or other basis of zero,[3] and a long-term capital gain of $3,372,342.

Respondent issued a notice of deficiency to petitioners for 1999. In the notice of deficiency, respondent determined that the $3,372,342 received from Singer was ordinary income.

Discussion

The issue is whether the $3,372,342 petitioners received from Singer for the assignment of future lottery payments is ordinary income or capital gain. Resolution of the issue depends

---

[3] On brief, petitioners assert a cost basis of $1.

on whether the right to receive future annual lottery payments constitutes a capital asset.

Section 1221 defines "capital asset" as follows:

SEC. 1221.  CAPITAL ASSET DEFINED.

(a) In General.

For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include--

> (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

> (2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in his trade or business;

> (3) a copyright, a literary, musical, or artistic composition, a letter or memorandum, or similar property, held by--

>> (A) a taxpayer whose personal efforts created such property,

>> (B) in the case of a letter, memorandum, or similar property, a taxpayer for whom such property was prepared or produced, or

>> (C) a taxpayer in whose hands the basis of such property is determined, for purposes of determining gain from a sale or exchange, in whole or part by

reference to the basis of such property in the hands of a taxpayer described in subparagraph (A) or (B);

(4) accounts or notes receivable acquired in the ordinary course of trade or business for services rendered or from the sale of property described in paragraph (1);

(5) a publication of the United States Government (including the Congressional Record) which is received from the United States Government or any agency thereof, other than by purchase at the price at which it is offered for sale to the public, and which is held by--

(A) a taxpayer who so received such publication, or

(B) a taxpayer in whose hands the basis of such publication is determined, for purposes of determining gain from a sale or exchange, in whole or in part by reference to the basis of such publication in the hands of a taxpayer described in subparagraph (A).

Petitioners contend that (1) the Court wrongly decided Davis v. Commissioner, 119 T.C. 1 (2002), (2) a lottery ticket falls within the definition of a capital asset, and (3) characterization of a lottery ticket and the resultant prize as a capital asset does not frustrate congressional intent.

Davis involved the same issue and nearly identical facts. The taxpayers in Davis won a California State lottery prize and subsequently assigned a portion of future annual lottery payments to Singer in exchange for a lump-sum payment. Id. at 3. We held

that the right to receive the future annual lottery payments did not constitute a capital asset within the meaning of section 1221. Id. at 7. We have repeatedly relied upon the analysis in Davis. Clopton v. Commissioner, T.C. Memo. 2004-95; Simpson v. Commissioner, T.C. Memo. 2003-155; Johns v. Commissioner, T.C. Memo. 2003-140; Boehme v. Commissioner, T.C. Memo. 2003-81.[4] No purpose would be served by repeating the analysis in Davis regarding why the right to receive future annual lottery payments does not constitute a capital asset.

Petitioners' remaining arguments all depend upon the determination that the lottery ticket was the property sold to Singer under the sale agreements. This argument was considered and rejected in Simpson and Johns.

Petitioners surrendered the lottery ticket to the Pennsylvania Lottery and claimed the lottery prize. The lottery prize was payable in 26 payments. Petitioners did not sell the lottery ticket to Singer, but rather their right to future lottery payments. Pursuant to our holding in Davis v. Commissioner and its progeny, we conclude that the $3,372,342

---

[4] Accord United States v. Maginnis, 356 F.3d 1179, 1187 (9th Cir. 2004) (holding that the amount that the taxpayer received in exchange for the taxpayer's assignment to a third party of his right to receive certain future annual lottery payments is ordinary income under the "substitute for ordinary income" doctrine).

petitioners received from Singer is ordinary income and not capital gain.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.