T.C. Memo. 2004-244


UNITED STATES TAX COURT


ROGER L. WATKINS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19587-02.              Filed October 26, 2004.


<u>Eric J. Zinn</u> and <u>Gregory W. Berger</u>, for petitioner.

<u>Mary T. Klaasen</u>, for respondent.


MEMORANDUM OPINION


HAINES, <u>Judge</u>:  Respondent determined a $518,463 deficiency in petitioner's Federal income tax for 1998 (year in issue).  The sole issue for decision is whether petitioner's receipt of $2,614,744 in exchange for an assignment of a right to receive

future lottery installment payments constitutes ordinary income or capital gain during the year in issue.[1]

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Hotchkiss, Colorado.

Petitioner purchased a $1 lottery ticket sometime before May 1, 1993. On May 1, 1993, petitioner won $12,358,688 from the Colorado State lottery with this ticket. At the time he won the lottery, petitioner was married to Tammy Watkins (Mrs. Watkins). The lottery prize amount was payable in 25 annual installments beginning on May 3, 1993, and payable on the third of May for the next 24 years.

---

[1] The parties stipulated that if the assignment does not constitute the sale of a capital asset, then a $200,000 fee paid to Will Hoover Group is deductible only as a miscellaneous itemized deduction on petitioner's Schedule A, Itemized Deductions, for 1998, as respondent determined in the notice of deficiency.

Petitioner reported the receipt of the first five lottery installment payments as ordinary income on his Federal income tax returns.

On February 7, 1997, petitioner and Mrs. Watkins were divorced by order of the District Court, Park County, of the State of Colorado. As part of the divorce settlement, the district court awarded petitioner and Mrs. Watkins each one-half interest in the future lottery installment payments as of May 3, 1998.

On or about April 10, 1998, petitioner entered into a contract with Stone Street Capital, Inc. (Stone Street) to sell and assign his one-half interest in the remaining lottery installment payments beginning with the annual payment due on May 3, 1999. The remaining lottery installment payments were as follows:

| Year | Amount |
|------|--------|
| 1999 | $384,220 |
| 2000 | 398,436 |
| 2001 | 413,178 |
| 2002 | 428,465 |
| 2003 | 444,318 |
| 2004 | 460,756 |
| 2005 | 477,805 |
| 2006 | 495,483 |
| 2007 | 513,815 |
| 2008 | 532,826 |
| 2009 | 552,540 |
| 2010 | 572,983 |
| 2011 | 594,183 |
| 2012 | 616,167 |
| 2013 | 638,965 |
| 2014 | 662,606 |
| 2015 | 687,122 |
| 2016 | 712,545 |
| 2017 | 738,909 |

The contract sale price of petitioner's interest in the remaining lottery installment payments was $2,614,744. On June 16, 1998, an order from the District Court for the City and County of Denver, Colorado, directing the Colorado State lottery to make assigned payments to Stone Street was issued. Petitioner received consideration of $2,614,744 for the remaining lottery installment payments from Stone Street on June 29, 1998.

On petitioner's 1998 tax return, he reported the one-half share of the annual installment payment awarded in the divorce settlement, i.e., $185,256, due on May 3, 1998, as ordinary income. Also on the 1998 tax return, petitioner reported the consideration received for the assignment of his one-half interest in the remaining lottery installment payments to Stone Street as the sale of a capital asset of $2,414,744, with a basis of zero. The sale amount represented the price paid by Stone Street, i.e., $2,614,744, minus $200,000 paid to Will Hoover Group as consulting fees for services provided in the assignment to Stone Street.

In the notice of deficiency, respondent determined that petitioner's assignment of his right to future lottery installment payments to Stone Street was not a sale of a capital asset, and the consideration received was includable as ordinary income in the full amount of $2,614,744. Further, respondent determined the deduction of $200,000 for consulting fees was allowable as a miscellaneous itemized deduction. Petitioner

timely filed a petition with the Court to dispute respondent's determinations.

## Discussion

The parties dispute whether petitioner's receipt of $2,614,744 in exchange for the assignment of his right to receive future lottery installment payments constitutes ordinary income or capital gain during the year in issue. Resolution of this issue depends on whether petitioner's right to receive the remaining lottery installment payments was a capital asset within the meaning of section 1221.

Petitioner's argument that the assignment was a sale of a capital asset relies on reasoning found in United States v. Maginnis, 356 F.3d 1179 (9th Cir. 2004). We note from the outset that we are not bound by the opinion of the Court of Appeals for the Ninth Circuit because appeal of this decision would lie in the Court of Appeals for the Tenth Circuit, which has not ruled on this issue. Sec. 7482(b)(1)(A).

Additionally, in Maginnis, the Court of Appeals affirmed the District Court holding that under the substitute for ordinary income doctrine the sale of a right to future lottery payments should be taxed as ordinary income.[2] Id. at 1187. Petitioner

---

[2] Under the "substitute for ordinary income doctrine", a court narrowly construes the term "capital asset" when taxpayers make attempts to transform ordinary income into capital gain. See Commissioner v. P.G. Lake, Inc., 356 U.S. 260, 265 (1958).

argues on the basis of reasoning stated as follows by the Court of Appeals:

> Two factors are crucial to our conclusion, although we do not hold that they will be dispositive in all cases. Maginnis (1) did not make any underlying investment of capital in return for the receipt of his lottery right, and (2) the sale of his right did not reflect an accretion in value over cost to any underlying asset Maginnis held. * * * [Id. at 1183; fn. ref. omitted]

Petitioner argues that his purchase of the lottery ticket was an underlying investment of capital. Further, petitioner argues that the assignment of lottery installment payments did reflect an accretion in value over cost to an underlying asset petitioner held because the assigned future lottery installment payments appreciated in value due to "impersonal market forces outside of the control of the asset's owner". We disagree. We find that the facts in Maginnis are indistinguishable from the instant case.

In Maginnis, the taxpayer assigned his right to receive the remaining installments of a lottery prize to a third party in exchange for a lump-sum payment. Id. at 1181. The Court of Appeals held that the taxpayer could not argue that a purchase of a lottery ticket was a capital investment. Id. at 1183. The Court of Appeals stated that "the purchase of a lottery ticket is no more an underlying investment of capital than is a dollar bet on the spin of a roulette wheel." Id. at 1184. Further, because the Court of Appeals held that the lottery ticket was not a capital investment, it also held that there was no "cost" to the

taxpayer for the right to receive the future lottery payments, and, therefore, the money received for the sale of the right could not be seen as reflecting an increase of value above the cost of any underlying asset.[3] Id.; see also Boehme v. Commissioner, T.C. Memo. 2003-81 (holding taxpayer's right to receive future annual lottery payments did not constitute a capital asset). We reiterated this reasoning in Clopton v. Commissioner, T.C. Memo. 2004-95, in which we held that the lump-sum amount received in exchange for an interest in a trust holding the right to receive future lottery payments was ordinary income. As a result, petitioner's arguments fail under Maginnis.

Additionally, we find the facts in the instant case indistinguishable in substance from the facts in our opinion of Davis v. Commissioner, 119 T.C. 1 (2002), and cases relying on this opinion, in which a taxpayer assigned a right to future lottery installment payments in return for a lump-sum payout at a discounted value from a third party. Id. at 3; Lattera v. Commissioner, T.C. Memo. 2004-216; Clopton v. Commissioner, supra; Simpson v. Commissioner, T.C. Memo. 2003-155; Johns v. Commissioner, T.C. Memo. 2003-140; Boehme v. Commissioner, supra. We held in each of these cases that a right to future lottery

_____

[3] We note that petitioner's tax return reported a zero cost basis with regard to amount received for the assignment of the future lottery installment payments to Stone Street.

installment payments did not constitute a capital asset within

the meaning of section 1221.[4]  Davis v. Commissioner, supra at 7;

_____

    [4]  SEC. 1221.  CAPITAL ASSET DEFINED.

        For purposes of this subtitle, the term "capital asset"
    means property held by the taxpayer (whether or not
    connected with his trade or business), but does not
    include--

        (1) stock in trade of the taxpayer or other
    property of a kind which would properly be included in
    the inventory of the taxpayer if on hand at the close
    of the taxable year, or property held by the taxpayer
    primarily for sale to customers in the ordinary course
    of his trade or business;

        (2) property, used in his trade or business, of a
    character which is subject to the allowance for
    depreciation provided in section 167, or real property
    used in his trade or business;

        (3) a copyright, a literary, musical, or artistic
    composition, a letter or memorandum, or similar
    property, held by--

            (A) a taxpayer whose personal efforts created
        such property,

            (B) in the case of a letter, memorandum, or
        similar property, a taxpayer for whom such
        property was prepared or produced, or

            (C) a taxpayer in whose hands the basis of
        such property is determined, for purposes of
        determining gain from a sale or exchange, in whole
        or part by reference to the basis of such property
        in the hands of a taxpayer described in
        subparagraph (A) or (B);

        (4) accounts or notes receivable acquired in the
    ordinary course of trade or business for services
    rendered or from the sale of property described in
    paragraph (1);

        (5) a publication of the United States Government
    (including the Congressional Record) which is received
                                              (continued...)

Lattera v. Commissioner, supra; Clopton v. Commissioner, supra; Simpson v. Commissioner, supra; Johns v. Commissioner, supra; Boehme v. Commissioner, supra.  Given the similarity of facts, it would serve no purpose in repeating the analysis provided in Davis v. Commissioner, supra.  See also Sec. State Bank v. Commissioner, 111 T.C. 210, 213-214 (1998)("The doctrine of stare decisis generally requires that we follow the holding of a previously decided case, absent special justification."), affd. 214 F.3d 1254 (10th Cir. 2000).

Pursuant to Davis v. Commissioner, supra, and its progeny, we hold that the $2,614,744 received by petitioner from Stone Street in exchange for petitioner's right to receive one-half of the remaining lottery installment payments is ordinary income and not capital gain.

---

[4](...continued)
from the United States Government or any agency thereof, other than by purchase at the price at which it is offered for sale to the public, and which is held by--

(A) a taxpayer who so received such publication, or

(B) a taxpayer in whose hands the basis of such publication is determined, for purposes of determining gain from a sale or exchange, in whole or in part by reference to the basis of such publication in the hands of a taxpayer described in subparagraph (A).

In reaching our holding herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent.</u>