T.C. Memo. 2004-262


UNITED STATES TAX COURT


ROGER LESLIE WOLMAN AND CAROLINE R. WOLMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18953-02.          Filed November 16, 2004.


Roger Leslie Wolman and Caroline R. Wolman, pro sese.

<u>Sara J. Barkley</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Respondent determined deficiencies of $1,600

and $88,434 in petitioner Roger Wolman's (Mr. Wolman's) and

petitioner Caroline Wolman's (Mrs. Wolman's), collectively

petitioners', Federal income taxes for 1998 and 1999,

respectively (years in issue).  The sole issue for decision is

whether petitioners' receipt of $20,000 and $550,000, in 1998 and

1999, respectively, in exchange for an assignment of a right to receive future lottery installment payments constitutes ordinary income or capital gain during the years in issue.

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue. Amounts are rounded to the nearest dollar.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners resided in Littleton, Colorado.

In 1988, Mr. Wolman purchased a computer and a computer program, "Lotto Challenger". Beginning in January 1989, Mr. Wolman used this program to choose numbers each week for the lottery.

On April 2, 1994, Mr. Wolman won $1,500,000 in the Colorado lottery. The lottery prize amount was payable in 25 annual installments beginning on April 4, 1994, and ending on April 4, 2018. Mr. Wolman reported the first five annual lottery installment payments received as ordinary income on his respective Federal tax returns.

On or about June 29, 1998, Mr. Wolman entered into a sale agreement with Capital First Financing (Capital First), which stated:

> Lottery Winner hereby sells and assigns to Purchaser and its assigns all Lottery Winner's right, title, and interest in and to the Assigned Payments, including without limitation, the right to receive the Assigned Payments from the State Lottery, and all related benefits and rights. * * *

This sale agreement was effective as of the lottery installment payment due on April 4, 1999. The total face amount of Mr. Wolman's interest in the remaining lottery installment payments was $1,298,107. The contract sales price for the 20 remaining lottery installment payments was $20,000 in advance and $550,000 upon closing on or about January 8, 1999.

On September 23, 1998, the District Court for the City and County of Denver, Colorado, issued an order approving Mr. Wolman's assignment of his interest in the remaining lottery installment payments to Capital First.

On petitioners' 1998 and 1999 Federal income tax returns, they reported the sale of Mr. Wolman's interest in the remaining lottery installment payments as the sale of a capital asset for $20,000 and $550,000, respectively. On the Schedules D, Capital Gains and Losses, attached to the tax returns, petitioners reported a cost basis of zero for the payments for 1998 and did not report a cost basis for the payments for 1999.

Respondent sent petitioners a notice of deficiency in which respondent determined that the amounts received from Capital First from the assignment of the rights to the remaining lottery installment payments were not the result of the sale of a capital asset, and the amounts were not capital gains.  Respondent determined that these amounts were includable as ordinary income. Petitioners timely filed a petition with the Court to dispute respondent's determination.

OPINION

The parties dispute whether petitioners' receipt of $20,000 and $550,000 in exchange for the assignment of Mr. Wolman's right to receive future lottery installment payments constitutes ordinary income or capital gain during the years in issue. Resolution of this issue depends on whether Mr. Wolman's right to receive the remaining lottery installment payments was a capital asset within the meaning of section 1221.

We find the facts in the instant case indistinguishable in substance from the facts in our opinion of Davis v. Commissioner, 119 T.C. 1 (2002), and cases relying on that opinion, in which a taxpayer assigned a right to future lottery installment payments in return for a lump-sum payout at a discounted value from a third party.  Id. at 3; Watkins v. Commissioner, T.C. Memo. 2004-244; Lattera v. Commissioner, T.C. Memo. 2004-216; Clopton v. Commissioner, T.C. Memo. 2004-95; Simpson v. Commissioner, T.C.

Memo. 2003-155; <u>Johns v. Commissioner</u>, T.C. Memo. 2003-140;

<u>Boehme v. Commissioner</u>, T.C. Memo. 2003-81.  We held in each of

these cases that a right to future lottery installment payments

did not constitute a capital asset within the meaning of section

1221.[1]   <u>Davis v. Commissioner</u>, <u>supra</u> at 7; <u>Watkins v.</u>

---

[1]  SEC. 1221. CAPITAL ASSET DEFINED.

For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include--

(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

(2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in his trade or business;

(3) a copyright, a literary, musical, or artistic composition, a letter or memorandum, or similar property, held by--

(A) a taxpayer whose personal efforts created such property,

(B) in the case of a letter, memorandum, or similar property, a taxpayer for whom such property was prepared or produced, or

(C) a taxpayer in whose hands the basis of such property is determined, for purposes of determining gain from a sale or exchange, in whole or part by reference to the basis of such property in the hands of a taxpayer described in subparagraph (A) or (B);

(continued...)

Commissioner, supra; Lattera v. Commissioner, supra; Clopton v.
Commissioner, supra; Simpson v. Commissioner, supra; Johns v.
Commissioner, supra; Boehme v. Commissioner, supra.  Given the
similarity of facts, it would serve no purpose to repeat the
analysis provided in Davis v. Commissioner, supra.  See also Sec.
State Bank v. Commissioner, 111 T.C. 210, 213-214 (1998)("The
doctrine of stare decisis generally requires that we follow the
holding of a previously decided case, absent special
justification."), affd. 214 F.3d 1254 (10th Cir. 2000).

Petitioners try to distinguish themselves from the Davis v.
Commissioner, supra, line of cases because of Mr. Wolman's
"investment" of time and money.  Petitioners do not have any

---

[1](...continued)

> (4) accounts or notes receivable acquired in the
> ordinary course of trade or business for services
> rendered or from the sale of property described in
> paragraph (1);

> (5) a publication of the United States Government
> (including the Congressional Record) which is received
> from the United States Government or any agency
> thereof, other than by purchase at the price at which
> it is offered for sale to the public, and which is held
> by--

>> (A) a taxpayer who so received such
>> publication, or

>> (B) a taxpayer in whose hands the basis of
>> such publication is determined, for purposes of
>> determining gain from a sale or exchange, in whole
>> or in part by reference to the basis of such
>> publication in the hands of a taxpayer described
>> in subparagraph (A).

unique arguments that would cause us to stray from the holding we reached in <u>Davis v. Commissioner</u>, <u>supra</u>; the end result is the same. The relevant events occurred after Mr. Wolman won the lottery, i.e., the assignment of future lottery installment payments, and those events do not change his receipt of ordinary income into gain from a sale of a capital asset.

Further, petitioners' argument that their assignment of all rights and benefits related to the lottery installment payments caused the character of the transaction to change must also fail. In <u>Lattera v. Commissioner</u>, <u>supra</u>, the taxpayers similarly assigned their "rights, title, and interest in the lottery prize" to a third party, and we held that the amount received by the taxpayers from the third party for the assignment of future lottery payments was ordinary income, not capital gain. See also <u>United States v. Maginnis</u>, 356 F.3d 1179, 1186-1187 (9th Cir. 2004)(concluding that a sale of an entire interest in a lottery winning is "not a persuasive reason to treat the sale of that right as a capital gain.").

Pursuant to <u>Davis v. Commissioner</u>, <u>supra</u>, and its progeny, we hold that the amounts received by petitioners from Capital First in exchange for Mr. Wolman's right to receive the remaining lottery installment payments are ordinary income and not capital gains.

In reaching our holding herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent.</u>