127 T.C. No. 9

UNITED STATES TAX COURT

JONATHAN N. AND KIMBERLY A. PALAHNUK, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12015-05.                    Filed October 11, 2006.

     In 2000, P acquired stock through his exercise of
an incentive stock option (ISO) within the meaning of
sec. 422(b), I.R.C.  P realized no income or loss on
the exercise for purposes of computing Ps' 2000 taxable
income but realized $2,086,009 of income for purposes
of computing Ps' 2000 alternative minimum taxable
income (AMTI).  In 2001, P sold the stock and realized
on the sale a regular tax capital gain of $148,461 and
an alternative minimum tax (AMT) capital loss of
$1,937,547.  During 2001, P also realized $153,625 of
capital losses unrelated to any ISO.  Ps calculated
their 2001 taxable income by including $3,000 of their
regular tax capital loss resulting from all of the
sales.  Ps argue that they may calculate their 2001
AMTI by reducing their 2001 taxable income by the
$2,086,009 difference (as rounded) between the $148,461
regular tax capital gain and $1,937,547 AMT capital
loss attributable to the stock related to the ISO.  Ps
argue alternatively that their 2001 AMTI is calculated
by reducing their 2001 taxable income by the $151,461

difference between the $148,461 regular tax capital
gain and $3,000 of their 2001 AMT capital loss.
        Held:  Pursuant to secs. 56(b)(3) and 1211(b),
I.R.C., Ps' 2001 AMTI is calculated by computing their
2001 AMT capital loss by using the AMT adjusted basis
of the stock related to the ISO and the $153,625 of
capital losses on the other sales, and adjusting Ps'
2001 taxable income by the difference between the 2001
regular tax capital loss included in the calculation of
that taxable income and Ps' 2001 AMT capital loss up to
a maximum of $3,000.  Because Ps included a $3,000
capital loss in computing their 2001 taxable income and
are allowed the same amount as a 2001 AMT capital loss,
Ps' adjustment to their 2001 taxable income is zero.

Don Paul Badgley, Brian G. Isaacson, and Duncan C. Turner,
for petitioners.

Julie L. Payne, for respondent.

OPINION

LARO, Judge:  This case is before the Court for decision

without trial.  See Rule 122.[1]  Petitioners petitioned the Court

to redetermine respondent's determination of a $155,305

deficiency in their 2001 Federal income tax.  The deficiency

stems from respondent's disallowance of an adjustment that

petitioners made in calculating their 2001 alternative minimum

taxable income (AMTI).  We decide whether the calculation of

petitioners' 2001 AMTI includes an adjustment for the difference

_____

    [1] Rule references are to the Tax Court Rules of Practice and
Procedure.  Section references are to the applicable versions of
the Internal Revenue Code.  Dollar amounts are rounded.

between the 2001 regular tax capital gain and 2001 alternative minimum tax (AMT) capital loss that were attributable to the sale of stock purchased through the exercise of an incentive stock option within the meaning of section 422(b) (ISO).[2] We hold that petitioners' 2001 AMTI is calculated by adjusting their 2001 taxable income by the difference between the regular tax capital loss included in the computation of their 2001 taxable income and the $3,000 AMT capital loss that is allowed for 2001 under section 1211(b).

## Background

All facts were stipulated or contained in the exhibits submitted therewith. We find the facts accordingly. Petitioners are husband and wife, and they filed a joint 2001 Form 1040, U.S. Individual Income Tax Return (2001 return). They resided in Hauppauge, New York, when their petition was filed.

During 2000 and 2001, Jonathan N. Palahnuk (petitioner) was employed by Metromedia Fiber Network, Inc. (Metromedia). On February 23, 1998, he and Metromedia entered into an agreement (petitioner's ISO) that allowed him to purchase shares of Metromedia class A common stock at a set price. Petitioner's ISO qualified as an ISO under section 422(b).

---

[2] We consider petitioners to have conceded any allegation of error asserted in their petition that they did not adequately pursue in their posttrial brief. See Harbor Cove Marina Partners Pship. v. Commissioner, 123 T.C. 64, 66 (2004); Davis v. Commissioner, 119 T.C. 1 n.1 (2002).

On March 15, 2000, petitioner exercised petitioner's ISO and purchased some Metromedia shares at a total cost of $99,949. On that date, the purchased shares had a total fair market value of $2,185,958. Petitioner realized no income or loss on the exercise for purposes of computing petitioners' 2000 taxable income but realized $2,086,009 of income for purposes of computing petitioners' 2000 AMTI.

In 2001, petitioner sold the Metromedia shares for $248,410 and realized a regular tax capital gain of $148,461 (shares' selling price of $248,410, less the shares' exercise cost of $99,949) and (as rounded) a $1,937,547 AMT capital loss (shares' selling price of $248,410, less the shares' AMT adjusted basis of $2,185,958).[3] Unrelated to any ISO, petitioner during 2001 also realized capital losses totaling $153,625.

On their 2001 return, petitioners included a $3,000 capital loss in calculating their 2001 taxable income as $561,161 and calculating their regular tax liability as $191,457. Although petitioners were not subject to the AMT in 2001, they computed their 2001 AMTI to ascertain the amount of the section 53 credit for prior year minimum tax liability that they could claim in

---

[3] A statement attached to petitioners' 2001 return reports that the selling price of the shares totaled $248,972 and that the resulting gain was $149,024 ($248,972 - $99,948). While petitioners acknowledge in their posttrial brief that the resulting gain was $148,461, they do not explain this discrepancy.

2001. Petitioners calculated their 2001 AMTI on 2001 Form 6251, Alternative Minimum Tax--Individuals, by reporting a negative $1,929,509 adjustment on line 9 of that form and by reporting two other unrelated adjustments in the total amount of $5,999.[4] They reported that their AMTI was negative $1,362,349 (taxable income of $561,161 + negative $1,929,509 + $5,999) and that their 2001 tentative minimum tax and 2001 AMT were both zero. For 2000, petitioners' AMT equaled $588,066. Petitioners adjusted that amount by $46,553 to reflect a net minimum tax on exclusion items and claimed on their 2001 return that they had a $541,513 minimum tax credit that could be applied to 2001 and later years. Petitioners applied $191,457 of this credit to their 2001 regular tax liability of $191,457, thus reducing that liability to zero, and claimed the $350,056 balance as a minimum tax carryover to 2002.

Respondent determined that petitioners were not entitled to the negative $1,929,509 adjustment. Accordingly, respondent determined, petitioners' 2001 AMTI was $567,160 (negative $1,362,349 + $1,929,509) and their resulting 2001 tentative minimum tax was $155,305. Further, respondent determined,

---

[4] We are unsure of the specifics of the negative $1,929,509 adjustment. Petitioners claim in their posttrial brief that they are entitled to a negative adjustment of $2,086,009, or in other words, the difference (as rounded) between the 2001 regular tax capital gain of $148,461 and the 2001 AMT capital loss of $1,937,547.

petitioners had no 2001 net minimum tax on exclusion items and a $588,066 minimum tax credit ($541,513 + $46,553) that was available for 2001 and later years. Respondent determined that petitioners could apply $36,152 of that credit to 2001 (regular tax liability of $191,457 - 2001 tentative minimum tax of $155,305) and carry over the $551,914 balance to later years.

## Discussion

The Internal Revenue Code imposes upon taxpayers an AMT in addition to all other taxes imposed by subtitle A. See sec. 55(a); Allen v. Commissioner, 118 T.C. 1, 5 (2002). The AMT is imposed upon a taxpayer's AMTI, which is an income base broader than the usual base of taxable income applicable to Federal income taxes in general. See Allen v. Commissioner, supra at 5. In order to compute AMTI, an individual must first compute his or her taxable income and then alter that amount (by way of an adjustment or an increase) to reflect the items described in the remainder of part VI, subchapter A, chapter 1, subtitle A (part VI).[5] Id. at 10.

---

[5] Part VI includes five sections, numbered and titled as follows:

SEC. 55.  Alternative Minimum Tax Imposed;
SEC. 56.  Adjustments in Computing Alternative Minimum Taxable Income;
SEC. 57.  Items of Tax Preference;
SEC. 58.  Denial of Certain Losses; and
SEC. 59.  Other Definitions and Special Rules.

One item described in part VI is ISOs. Specifically, section 56(b)(3) provides that "Section 421 shall not apply to the transfer of stock acquired pursuant to the exercise of an incentive stock option * * *. The adjusted basis of any stock so acquired shall be determined on the basis of the treatment prescribed by this paragraph." Under section 421, an individual who exercises an ISO is not taxed on the exercise but is taxed when he or she sells the resulting stock. See sec. 421(a). Thus, pursuant to sections 56(b)(3) and 421(a), petitioners were required to recognize the following income or loss on the exercise of petitioner's ISO in 2000 and the sale of the resulting stock in 2001: For 2000, zero and income of $2,086,009 for regular tax and AMT purposes, respectively; for 2001, a capital gain of $148,461 and a capital loss of $1,937,547 for regular tax and AMT purposes, respectively.

Petitioners assert that section 56 entitles them to deduct a net operating loss for 2001 equal to the $2,086,009 difference (as rounded) between the 2001 regular tax capital gain of $148,461 and the 2001 AMT capital loss of $1,937,547. To this end, petitioners argue, the $2,086,009 difference is an AMT net operating loss within the meaning of section 56(d)(2)(A)(i) and allowing such a deduction comports with legislative intent, equity, and policy. In Merlo v. Commissioner, 126 T.C. 205 (2006), the Court recently rejected similar arguments made by the

taxpayers there.  We do likewise here for the same reasons stated in <u>Merlo</u>.[6]  Accord <u>Montgomery v. Commissioner</u>, 127 T.C. ___ (2006); <u>Spitz v. Commissioner</u>, T.C. Memo. 2006-168.

Alternatively, petitioners argue, they may compute their 2001 AMTI by subtracting from their 2001 taxable income the $151,461 difference between the $148,461 regular tax capital gain for 2001 and the $3,000 allowable AMT capital loss for 2001. According to petitioners, this difference is a net operating loss negative adjustment that reduces their 2001 taxable income. While we agree with petitioners that the difference between a regular tax capital gain or loss and an AMT capital gain or loss must be taken into account in calculating a taxpayer's AMTI, we disagree with petitioners that the difference in this case is a net operating loss for the same reasons set forth in <u>Merlo v. Commissioner</u>, <u>supra</u>.  Accord <u>Montgomery v. Commissioner</u>, <u>supra</u>; <u>Spitz v. Commissioner</u>, <u>supra</u>.  For the reasons stated below, we also disagree with petitioners that $151,461 is the difference that must be taken into account in computing their 2001 AMTI.

In <u>Allen v. Commissioner</u>, <u>supra</u> at 10, we explained that an individual calculates AMTI by first computing regular taxable income and then making the necessary alterations to reflect the

---

[6] Petitioners acknowledge in their posttrial brief that this issue was decided adversely to them in <u>Merlo v. Commissioner</u>, 126 T.C. 205 (2006).

items described in part VI. Thus, petitioners must calculate their 2001 AMTI by adjusting their 2001 taxable income to reflect the mandate of section 56(b)(3) that their AMTI be computed using their AMT adjusted basis in the stock acquired through the exercise of petitioner's ISO rather than their regular tax adjusted basis in that stock. In other words, given that petitioners computed their 2001 taxable income by factoring in a $3,000 capital loss, petitioners' adjustment under section 56(b)(3) must reflect the substitution of that $3,000 capital loss with the $3,000 allowable portion of their 2001 AMT capital loss (discussed below).

Petitioners calculate their 2001 AMTI by reducing their taxable income by the $148,461 regular tax capital gain attributable to petitioner's ISO (rather than the $3,000 capital loss factored into the computation of their 2001 taxable income). We do not do similarly. In addition to the sales underlying the $148,461 capital gain, petitioners had other sales of capital assets during 2001. Although those other sales were unrelated to petitioner's ISO, they are nevertheless sales that entered into the calculation of petitioners' 2001 regular tax capital loss and, hence, must necessarily enter into the calculation of petitioners' adjustment under section 56(b)(3). Considering all of the sales together, petitioner realized a regular tax capital loss of $5,164 (the sum of the non-ISO losses of $153,625 and the

regular tax ISO gains of $148,461) and an AMT capital loss of $2,091,170 (the sum of the non-ISO losses of $153,625 and the AMT ISO losses of $1,937,547). The recognition of both the regular tax capital loss and the AMT capital loss is limited to $3,000, see sec. 1211(b); see also Merlo v. Commissioner, supra (section 1211(b) limits an individual's annual deduction of an AMT capital loss to $3,000), which, in turn, means that petitioners' adjustment under section 56(b)(3), representative of the difference between the recognized losses for regular tax and AMT purposes, is zero as determined by respondent.

We sustain respondent's determination. In so doing, we have considered all of petitioners' arguments and conclude that those arguments not discussed herein are without merit.

Decision will be entered

for respondent.