T.C. Summary Opinion 2010-138


UNITED STATES TAX COURT


GILBERT SAUNDERS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 22122-05S, 3462-06S.   Filed September 20, 2010.


Lawrence J. Avallone, for petitioner.

Harry J. Negro, for respondent.


CHABOT, Judge:  These cases were heard pursuant to section 7463.[1]  The decisions to be entered are not reviewable by any other court, and this opinion shall not be treated as a precedent for any other case.  Sec. 7463(b).

---

[1]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1986 as in effect for the years in issue, except as to sec. 7463, which is as in effect for proceedings commenced on the dates the petitions in the instant cases were filed.

Respondent determined deficiencies in Federal individual income taxes, penalties, and an addition to tax against petitioner as follows:

| Docket No. | Year | Deficiency | Penalty Sec. 6662 | Addition to Tax Sec. 6651(a)(1) |
|---|---|---|---|---|
| 22122-05S | 2002 | $5,296 | $1,059.20 | -0- |
|  | 2003 | 4,845 | -0- | $404.40 |
| 3462-06S | 2004 | 8,505 | 1,701.00 | -0- |

After concessions by both sides,[2] the issues for decision are:

_____

[2]Petitioner concedes he is not entitled to the education credits he claimed for 2002 and 2003. Both sides have made concessions regarding specific deductions on Schedule E, Supplemental Income and Loss, for each of the years in issue; these concessions are noted in the discussion infra part B.

Respondent determined that petitioner filed his 2003 tax return on June 18, 2004 (i.e., that the IRS received the tax return on that date), and that petitioner is liable for a 15-percent addition to tax for 2003 because of this late (i.e., after April 15, 2004) filing. At trial petitioner contended as follows:

> We will show that Mr. Saunders justifiably relied on the expertise and the advice of his accountant. That a[n] allegedly late filing in the year 2003 was to some extent was not the fault of Mr. Saunders, but rather was the negligence of his accountant. Thank you, Your Honor.

Petitioner testified that he was reasonably sure that he received his claimed 2003 tax refund in March 2004 and so his 2003 tax return must have been filed timely. Respondent introduced evidence that IRS records showed the 2003 tax return was received on June 18, 2004, and petitioner's claimed refund was mailed on July 12, 2004. On brief petitioner does not refer to this issue and does not object to respondent's proposed findings of fact. We conclude that petitioner has abandoned his objection to imposition of the late filing addition to tax for 2003, at 15 percent, although the dollar amount of this addition

(continued...)

(1) Whether petitioner is entitled to any deduction for:

(a) specific expenses claimed on Schedule E, Supplemental Income and Loss, and, if so, then in what amounts;

(b) Schedule E depreciation expenses and, if so, then in what amounts; and

(c) charitable contributions and, if so, then in what amounts; and

(2) whether petitioner is liable for accuracy-related penalties for 2002 and 2004 and, if so, then in what amounts.

## Background

The instant cases were consolidated for trial, briefing, and opinion.

Petitioner resided in Pennsylvania when the petitions in the instant cases were filed.

For convenience, we will combine our findings and analysis issue by issue.

---

[2](...continued)
to tax is to be recalculated to take account of our determinations and respondent's concessions. See Palahnuk v. Commissioner, 127 T.C. 118, 119 n.2 (2006), affd. 544 F.3d 471 (2d Cir. 2008); Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989).

## Analysis

A. <u>In General</u>

In general, the Commissioner's determinations as to matters of fact in the notice of deficiency are presumed to be correct, and the taxpayer has the burden of proving otherwise. See Rule 142(a);[3] <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Petitioner contends that section 7491(a) applies to shift the burden of proof but does so only with regard to the deductions for charitable contributions. We deal with this matter in our discussion of the charitable contribution deductions, <u>infra</u> part C. We deem petitioner's lack of argument with respect to the burden of proof on the remaining disputed deductions a concession that he retains the burden of proof for those items.

Section 7491(c) imposes on respondent the burden of production with respect to the section 6662 penalties. This will be dealt with <u>infra</u> part D. (Because we have concluded that petitioner abandoned his opposition to imposition of the section 6651(a)(1) addition to tax for 2003, see <u>supra</u> note 2, we conclude that section 7491(c) does not impose on respondent any burden of production with respect to that issue. If respondent had had this burden, then we would have held that respondent had carried this burden.)

---

[3]Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.

B. Schedule E Deductions

Petitioner owned rental real estate in Philadelphia, Pennsylvania (hereinafter sometimes referred to as the Philadelphia Property), during each of the years in issue. The Philadelphia Property includes a three-story building, each story of which contains a separate apartment.

1. Specific Deductions for 2002

Petitioner claimed $13,468 of expense deductions on his 2002 tax return Schedule E on account of the Philadelphia Property. Respondent disallowed the entire amount.

(a) Agreed Items

The parties agree that the amounts set forth in table 1 are deductible in full for 2002.

Table 1

| Company | Item | Amount |
|---|---|---|
| West Philadelphia Locksmith Co. | Lock change | $85 |
| Weinstein Supply | Plumbing | 54 |
| King Tu, Inc. | Storm door | 57 |
| Tommy D's Home Improvement | Compound | 5 |
| Total | | 201 |

The parties agree that the amounts set forth in table 2 are to be capitalized and depreciated under the modified accelerated cost recovery system (hereinafter sometimes referred to as MACRS).

Table 2

| Company | Item | Amount | Recovery Period (Yrs.) |
|---|---|---|---|
| Alarmist Security Systems | Fire alarm | $1,551 | 27.5 |
| Southwest Vinyl Windows | Windows | 614 | 27.5 |
| ACAR Refrigeration, Inc. | Range, refrigerator | 375 | 5.0 |
| Total | | 2,540 | |

The amounts that are deductible for 2002 are to be calculated in the computations under Rule 155. As a result of the parties' agreement, appropriate amounts (hitherto unclaimed) also will be deductible for 2003 and 2004.

(b) Disputed Items

The parties dispute the remaining $10,727 of items. The items, and our dispositions, are set forth in table 3. We consider the items seriatim.

Table 3

| Company | Item | Claimed | Allowed[1] |
|---|---|---|---|
| Neighborhood Spirit Property & Casualty | Homeowner's insurance | $1,109 | -0- |
| Vincent Goffredo Registered Plumbing & Heating, Inc. | Plumbing repairs | 2,025 | $2,025 |
| ADR Services, Inc. | Bathtub refinishing | 335 | 335 |
| Z.T. Home Remodeling and Repairs | Kitchen renovation | 4,800 | 4,800 |
| Chester Muhammad | Accounting services | 600 | 200 |
| Other | Other | 1,858 | -0- |

[1]The $4,800 item is to be capitalized and depreciated under MACRS over a 27.5-year recovery period, with appropriate amounts deductible for 2003 and 2004. See text immediately following table 2,

supra.  The other allowed items are deductible in full for 2002.  We note that sec. 179 (relating to election to expense certain depreciable assets) does not apply to any of the capitalized items involved in the instant cases.  See LaPoint v. Commissioner, 94 T.C. 733, 735-736 (1990).

(1) Homeowner's Insurance

Petitioner contends that he paid $1,109 for homeowner's insurance for the Philadelphia Property in 2002.  He relies on an exhibit that is an expiration notice from the insurance company.  The notice states that the due date was February 20, 2002 (the date of the notice is February 27, 2002), but:  "If payment is received within 15 days after the due date, your policy will renew without interruption of coverage."  Petitioner testified:

> Q  [Petitioner's counsel]  Okay.  What is the total amount of the homeowners insurance for that property?
>
> A  [Petitioner]  $1,109.31.
>
> Q  And is it your testimony today that you paid your homeowners insurance?
>
> A  Yes.  What I do is, I pay it in two parts.  I pay it in February, and I paid as is indicated in the last line, $561.65, and I have to pay the balance in June.

Respondent contends that (1) the one exhibit petitioner presented showed that petitioner had not paid, (2) petitioner did not present any checks or other proofs of payment, and (3) petitioner presented no evidence as to 2003 and 2004, "which leads to the inference that the policy did expire and was never renewed."

Petitioner claimed the amounts shown in table 4 on his Schedules E as insurance expenses.

### Table 4

| Year | Amount |
| --- | --- |
| 2002 | $1,250 |
| 2003 | 1,400 |
| 2004 | 1,400 |

Petitioner did not provide any documents (even past due notices) as to his claimed insurance expense deductions for 2003 and 2004, nor did he testify as to those years. Although on brief petitioner contends he paid $1,109 for insurance on the Philadelphia Property in 2002 (not the $1,250 he claimed on his 2002 tax return), we have not found any contention on brief as to the claimed homeowner's $1,400 insurance deductions for 2003 and 2004.

We conclude that it is more likely than not that petitioner let the insurance lapse and never made any of the claimed insurance payments on the Philadelphia Property. We so hold.

### (2) Plumbing Repairs

Petitioner contends that he paid $2,025 in 2002 to Vincent Goffredo Registered Plumbing & Heating, Inc. (hereinafter sometimes referred to as Goffredo), for plumbing repair work on the Philadelphia Property. Respondent contends there are flaws in the Goffredo invoice petitioner presented and that the invoice does not show that it was paid; respondent concludes the analysis

as follows: "The invoice by itself does not substantiate that the claimed expenditure was actually paid."

The exhibit is labeled "Statement", and states that payment is due "Upon Receipt". The exhibit is dated "5-8-02", which respondent concedes is May 8, 2002. Next to the exhibit's description of plumbing work done in the basement and side yard of the Philadelphia Property is the date "5-1-3". At trial respondent's counsel read it as "5-1-03". On brief respondent interprets it as "May 1, 2003." It is evident that an invoice or statement dated May 8, 2002, is not requiring payment "Upon Receipt" for work to be done May 1, 2003. Also, the exhibit's description of the work is in the past tense. The obvious interpretation of "5-1-3" is that the work was done between May 1 and May 3, consistent with petitioner's testimony. Thus, we reject respondent's proposed finding of fact that "Exhibit 6-J has conflicting dates as to the year."

Respondent does not contend that this item should be capitalized.

We conclude that it is more likely than not that the work is a repair item and that petitioner paid the $2,025 stated amount in 2002. Petitioner is entitled to deduct the full $2,025 for 2002. We so hold.

### (3) <u>Bathtub Refinishing</u>

Petitioner contends that he paid $335 to ADR Services, Inc., in 2002 for stripping and refinishing the bathtub in the third floor apartment of the Philadelphia Property. Respondent contends that petitioner has not shown documentary evidence that the ADR Services invoice was paid.

The invoice and petitioner's testimony convince us that it is more likely than not that petitioner paid the $335 invoice amount, that the work is a repair item that need not be capitalized (respondent does not contend for capitalizing), and that the full $335 is deductible for 2002. We so hold.

### (4) <u>Kitchen Renovation</u>

On his 2002 tax return petitioner claimed a $4,800 deduction for kitchen renovation. Respondent disallowed the entire amount. On brief petitioner concedes that the $4,800 should be capitalized and depreciated under MACRS over a 27.5-year period. Respondent continues to maintain that no deduction should be allowed, but as a backup, states on brief:

> If the Court determines that Exhibit 4-J is adequate substantiation for the second floor renovations, the Court should hold that the expenditure is capital in nature. The installation of a new kitchen certainly adds value to the property. Petitioner may not deduct capital expenditures as a current expense. I.R.C. § 263(a). The alleged second floor renovation is a structural upgrade to the existing residential real estate and would be depreciated under MACRS on a straight line basis with a recovery period of 27.5 years. I.R.C. § 168(b)(3)(B) and I.R.C. § 168(c).

In support of petitioner's contention he offered his own testimony and an exhibit that purports to be a "job work order" from Z.T. Home Remodeling and Repairs.  The document references Zebaler Thomas, Sr., who is hereinafter sometimes referred to as Thomas.  The document is hereinafter sometimes referred to as the 2002 Thomas job work order.

Respondent's analysis appears to be an attack on the adequacy of the 2002 Thomas job work order as substantiation of the claimed deduction.  Respondent appears to take the position that petitioner has even failed to show that there was a kitchen renovation in 2002.

Although the matter is not free from doubt, on the basis of the 2002 Thomas job work order and petitioner's testimony we conclude that it is more likely than not that petitioner paid $4,800 in 2002 for the renovation of the kitchen in the second floor apartment of the Philadelphia Property.[4]  We so hold.

### (5) Accounting, Other

The foregoing disposes of all but $2,458 of the disallowed claimed Schedule E expenses for 2002.  On his Schedule E petitioner claimed a deduction for $600 of legal and other professional fees.

---

[4]We note that the effect of this resolution is to disallow substantially all of the claimed 2002 deduction.

Chester Muhammad (hereinafter sometimes referred to as Chester), assisted by his daughter, Chalamar Muhammad (hereinafter sometimes referred to as Chalamar), were petitioner's accountants. Chester, assisted by Chalamar, prepared petitioner's tax returns for each of the years from 1997 through the years in issue. Petitioner did not substantiate the $600 claimed deduction. Yet, he must have paid Chester or Chalamar for their business accounting services. Bearing heavily against petitioner because the inexactitude is of his own making, we conclude that he paid at least $200 for these services in 2002 and is entitled to deduct $200. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We so hold.

As to all 2002 Schedule E specific expense deductions not otherwise disposed of, we conclude that petitioner has failed to carry his burden of proving error in respondent's determinations. We so hold.

2. Specific Deductions for 2003

Petitioner claimed $12,200 of expense deductions on his 2003 tax return Schedule E on account of the Philadelphia Property. Respondent disallowed the entire amount.

Repairs of $5,000 were included in the $12,200 so claimed and disallowed.

(a) Agreed Items

The parties agree that the amounts set forth in table 5 are deductible.

Table 5

| Item | Amount | Tax Treatment[1] |
|------|--------|---------------|
| Unspecified repair items | $681 | Currently deductible |
| ACAR Refrigeration, Inc. | 350 | Capitalized; MACRS; 5 yrs. |
| Colonial Iron | 1,150 | Capitalized; MACRS; 15 yrs. |

[1]As to the capitalized items, appropriate amounts (hitherto unclaimed) also will be deductible for 2004. See text immediately following table 2, supra.

(b) Disputed Items

(1) Flooring

Petitioner spent $219 for 70 square feet of porcelain tile and related materials and included the deduction in the repairs category. Petitioner contends the $219 is currently deductible. Respondent contends the $219 should be capitalized under MACRS with a 27.5-year recovery period.

Petitioner testified that the tiles and other materials were for a bathroom or kitchen floor and that such tile floors are not replaced every year. Petitioner does not explain on brief or in his testimony why the flooring cost should be deductible in full for 2003. We will not conjure up plausible possibilities for him.

We conclude that the $219 must be capitalized. Section 168(c) provides that the recovery period for residential rental

property is 27.5 years. Petitioner has not suggested that any of the seven shorter recovery periods listed in section 168(c) applies. We conclude that the $219 must be capitalized under MACRS with a 27.5-year recovery period. We so hold. As with the other capitalized items, an appropriate amount (hitherto unclaimed) also will be deductible for 2004. See text immediately following table 2, supra.

### (2) Accounting, Other

The foregoing disposes of all but $9,800 of the disallowed claimed Schedule E expenses. On his Schedule E petitioner claimed a deduction for $600 of legal and other professional fees.

For the reasons set forth in our analysis of 2002 expenses, we conclude that petitioner paid at least $200 for Chester's accounting services in 2003 and is entitled to deduct $200. We so hold.

As to all 2003 Schedule E specific expense deductions not otherwise disposed of, we conclude that petitioner has failed to carry his burden of proving error in respondent's determinations. We so hold.

### 3. Specific Deductions for 2004

Petitioner claimed $29,547 of expense deductions on his 2004 tax return Schedule E on account of the Philadelphia Property. Respondent disallowed the entire amount. Repairs of $22,000 were

included in the $29,547 so claimed and disallowed, as was $1,600 described as "fire control box".

### (a) Agreed Items

The parties agree that petitioner is entitled to deduct (1) $110 for the smoke detectors in the second floor apartment (we assume this is a part of the tax return's $1,600 fire control box item) and (2) $90 for a housing inspection license (which the parties have not further identified as to tax return category).

### (b) Disputed Items

#### (1) Remodeling of Third Floor Apartment

On his tax return petitioner claimed a $22,000 deduction for repairs. On brief he concedes that the $22,000 should be capitalized and depreciated under MACRS with a recovery period of 27.5 years. Respondent contends that no deduction should be allowed, but that if we find that there was a remodeling of the third floor apartment, then the cost should be capitalized and depreciated under MACRS with a recovery period of 27.5 years.

Petitioner's concession as to capitalization disposes of substantially all of the $22,000 claimed deduction. There remains for our determination whether any deduction at all should be allowed for 2004 on account of this item.

In support of his contention petitioner offered his own testimony that "We redid the whole third floor", and four exhibits; the exhibits are hereinafter sometimes collectively

referred to as the 2004 Thomas job work order.  Three of these four exhibits, each of which is described in table 6, are Z.T. Home Remodeling and Repairs job work orders.  (In the various documents and petitioner's testimony, "renovation" and "remodeling" appear to be used interchangeably.  For convenience, we will use "remodeling".)

### Table 6

| Item | Exh. 22-J | Exh. 23-J | Exh. 24-J |
| --- | --- | --- | --- |
| Date of order | 2/18/04 | 6/1/04 | 6/1/04 |
| Start date | 2/20/04 | 6/3/04 | 6/3/04 |
| Date completed | 4/18/06 | 7/1/04 | 8/30/04 |
| Materials | $5,000 | $800 | $8,000 |
| Labor | 15,000 | 1,200 | 12,000 |
| Total | 20,000 | 2,000 | 20,000 |

The fourth exhibit (Exhibit 30-P) is a letter from Thomas, dated September 24, 2007, stating as follows:

> To Whom It May Concern:
>
> Please note that I completed a remodeling project at the above referenced property for $20,000 total.  This amount was paid in cash per the attached invoice.

The referenced "attached invoice" is a copy of Exhibit 22-J.

Petitioner testified that the April 18, 200<u>6</u>, completion date shown on Exhibit 22-J was a mistake; the work was completed on April 18, 200<u>4</u>.  He did not explain how it was that, years later when Exhibit 30-P was generated and trial preparations were under way, neither Thomas nor petitioner noticed the 2006 completion date error.

As table 6, <u>supra</u>, shows, Exhibits 22-J and 24-J state different dates for order, start, and completion.  Petitioner explained as follows:

> Q  [Respondent's counsel]  And so something is wrong; is that correct?
>
> A  [Petitioner]  Like I said, Mr. Negro, where this invoice [Exh. 24-J] came was probably later.  This [Exh. 22-J] is the original.  There were so many files and documents given to my attorney.  I had asked if this was in there, and I had asked Mr. Thomas to draft me -- to write an estimate based on the best of his ability to the work that he did on the third floor.
>
> He didn't have anything, and didn't have any copies of his invoice.  It was a simple error, but the work was done.

On redirect examination petitioner gave essentially the same explanation, including the statement that "he [Thomas] didn't use the same dates because he didn't have a copy."  Notwithstanding petitioner's explanation, Exhibit 30-P includes a copy of Exhibit 22-J.  Evidently, Thomas did have Exhibit 22-J in his files and so it was not necessary for Thomas to try to reconstruct from memory what was on the original job work order.  On re-cross-examination petitioner explained that he gave to Thomas the copy of Exhibit 22-J that Thomas attached to the cover letter to create Exhibit 30-P.  But if petitioner had Exhibit 22-J all the time, then why did he ask Thomas to create from memory what became Exhibit 24-J?  However one cuts them, the pieces petitioner presents do not fit together.

Exhibit 23-J is another dangling part of the picture. That exhibit also states that it is for remodeling the third-floor apartment of the Philadelphia Property; the stated cost is $2,000. Petitioner testified that "22-J and 23-J are valid." In the cover letter portion of Exhibit 30-P Thomas states that "$20,000 total" was his charge for the "remodeling project". What, then, does the $2,000 cost on Exhibit 23-J relate to?

Finally, we deal with petitioner's testimony as to payment. Petitioner testified he paid the $20,000 total remodeling cost in cash, $5,000 "to start with, and I paid 15 upon completion." Petitioner variously explained that he may have gotten the cash from either (1) a credit line, (2) an advance on his credit cards, or (3) his wife.[5] Twenty thousand dollars was not a small amount for petitioner in 2004, when he reported wages of $59,228,[6] taxable interest of $97, and rent receipts of $4,800. We are troubled by petitioner's inability to search his records, obtain records from credit card companies, obtain testimony from his "wife", or otherwise explain his source for the asserted $20,000 of cash.

---

[5]Though petitioner testified he may have gotten the $20,000 from his wife, he filed his income tax returns as a single person for each of the years in issue. This apparent inconsistency was not explained, and we leave the parties where we find them on this issue.

[6]Petitioner's 2004 tax return shows that $13,729 had been withheld as taxes from his $59,228 wages.

Petitioner's testimony and the conflicting substantiating documents in the 2004 Thomas job work order convince us that it is more likely than not that any such remodeling and payment did not occur, at least not in 2004. Thus, there is nothing to capitalize and deduct, even in part, for 2004. We so hold.

(2) Accounting, Other

The foregoing disposes of all but $7,347 of the disallowed claimed Schedule E expenses.

Unlike the 2002 and 2003 Schedules E, petitioner's 2004 Schedule E did not claim any deduction for legal and other professional fees. On brief petitioner does not refer to any 2004 Schedule E specific expense deduction items other than those dealt with supra. We conclude that petitioner has conceded all of the remaining $7,347. We so hold.

Petitioner introduced a letter from Chalamar stating that petitioner "utilized my company's professional services for the tax year 2004 for the total amount of $600.00." (The record does not include similar evidence for 2002 or 2003.) However, petitioner did not claim a deduction for such an expense on his 2004 tax return (neither on Schedule E nor on Schedule A, Itemized Deductions). Petitioner did not contend in his posttrial briefs that any such deduction should be allowed, and he did not comment on respondent's proposed findings of fact regarding that letter. We conclude that petitioner abandoned

whatever purpose he had at trial in offering that letter.  See supra note 2.  We so hold.

4.  Depreciation Deductions, 2002-2004

Petitioner claimed $1,725 in depreciation deductions for the Philadelphia Property for each of the years in issue.  This was determined by using the straight-line method, a cost basis of $69,000, and a useful life of 40 years.  Respondent disallowed the entire deduction for each of those years.  Respondent contends that petitioner did not establish the Philadelphia Property's basis or the recovery period for the related depreciation deductions.

Petitioner's father transferred the Philadelphia Property to petitioner for a stated price of $1 on April 30, 1986.  Attached to the grantor deed is a certification ("required by City of Philadelphia real estate transfer tax ordinance") that "The fair value of the property is * * * $12,000."  From the schedules attached to petitioner's 2003 and 2004 tax returns, we gather that petitioner had claimed $9,252 in depreciation before 2002. (Petitioner's 2002 tax return does not appear to include any comparable schedule.)

In the face of respondent's determinations disallowing the entire claimed depreciation deduction for each year in issue, petitioner failed to provide any information from which we could determine (a) petitioner's basis in the Philadelphia Property

when he acquired the property in 1986, (b) how much depreciation petitioner had successfully claimed in the years after the acquisition and before the years in issue, or (c) whether petitioner had any depreciable basis left at the start of the years in issue. See secs. 167(c), 1016(a). Accordingly, we conclude that petitioner failed to show any error in respondent's determinations on this matter. We so hold.

C. <u>Charitable Contributions</u>

Petitioner is entitled to deduct his charitable contributions. See sec. 170(a).

We consider first petitioner's contention as to the burden of proof for all 3 years in issue, and then the allowability of the claimed charitable contribution deductions for each of these years.

1. <u>Burden of Proof</u>

Section 7491(a) imposes the burden of proof on the Commissioner as to a factual issue if certain conditions have been met, including as here relevant: (1) The taxpayer has introduced credible evidence on that issue; (2) the taxpayer has substantiated the item in accordance with the Internal Revenue Code's requirements; (3) the taxpayer has maintained all records required under the Internal Revenue Code; and (4) the taxpayer has cooperated with reasonable requests by the Commissioner for witnesses, information, documents, meetings, and interviews.

Petitioner contends:

In the case presently before the Court, the taxpayer has met and exceeded the aforesaid requirements, certainly going well beyond that of a frivolous claim or tax-protester type argument.

Petitioner introduced the testimony of Reverand [sic] Charles Vincent Daniels, Sr., Reverand [sic] of Ebenezer Baptist Church. (exhibit 35-J) to supplement the written documentation and substantiation offered in regard to the charitable contribution deductions taken in regard to the relevant tax years.

Respondent contends petitioner has not satisfied any of these requirements.

On his tax returns petitioner claimed charitable contribution deductions as shown in table 7.

### Table 7

| Item | 2002 | 2003 | 2004 |
|------|------|------|------|
| Cash or check | $4,000 | $7,000 | $7,500 |
| Other[1] | 500 | -0- | -0- |
| Total | 4,500 | 7,000 | 7,500 |

[1]The only explanation of this item on petitioner's 2002 tax return is "SALVATION ARMY". The tax return does not include any description of the property asserted to have been contributed.

The only document petitioner submitted in support of his 2002 deduction was a "self-prepared" (i.e., not prepared by or on behalf of the charitable donee) list showing that on every Sunday in 2002 petitioner contributed cash to the Ebenezer Baptist Church; the list showed contributions of $100 on each of the first 2 Sundays and $86 on each of the remaining 50 Sundays. Petitioner submitted similar documents in support of his 2003 and

2004 deductions.  All were prepared by Chester, assertedly from notebooks in which petitioner recorded each week the contribution he made that week.

The 2002 document conflicts with petitioner's 2002 tax return, also prepared by Chester, in that the document shows $4,500 of cash contributions to Ebenezer Baptist Church, while the tax return shows $500 of the same $4,500 total was noncash contributed to the Salvation Army.  Petitioner ignores these conflicts in his testimony[7] and on brief.

_____

[7]Petitioner testified as follows:

    Q  [Petitioner's counsel]  All right.  Now in the year 2002, if you will look at the second page, you see at the bottom right-hand corner a little box with a grand total?

    A  [Petitioner]  Yes.

    Q  And could you read that number, please?

    A  $4,500.

    Q  Okay.  Is that the amount of money that you are testifying that you contributed to Ebenezer Baptist Church in the year 2002?

    A  Yes.

    On cross-examination, when petitioner was confronted by the conflict between the document and his testimony on the one hand, and his 2002 tax return on the other hand, he testified as follows:

    Q  [Respondent's counsel]  So can we agree that either your income tax return is wrong or this statement is wrong?

(continued...)

Petitioner testified that each of his weekly contributions was a tithe, which he testified was 10 percent of his gross salary, for a total of $4,500. Petitioner's tax return shows his 2002 gross salary was $38,755 (from Pennsylvania Power and Lighting), 10 percent of which is $3,876. For 2003 the tithes[8] totaled $5,200, while 10 percent of petitioner's gross salary was only $3,790. For 2004 the tithes[9] totaled $5,200, while 10 percent of petitioner's gross salary was $5,923. Petitioner

---

[7](...continued)
    A  No, everything is valid as it is.

Perhaps petitioner was trying to emulate the White Queen's advice to Alice:

> "Now I'll give you something to believe. I'm just one hundred and one, five months and a day."
> "I ca'n't believe that!" said Alice.
> "Ca'n't you?" the Queen said in a pitying tone. "Try again: draw a long breath, and shut your eyes."
> Alice laughed. "There's no use trying," she said: "one ca'n't believe impossible things."
> "I daresay you haven't had much practice," said the Queen. "When I was your age, I always did it for half-an-hour a day. Why, sometimes I've believed as many as six impossible things before breakfast."

Dodgson, C.L., The Complete Works of Lewis Carroll (Through the Looking-Glass) 200 (Modern Library ed.).

[8]In addition, petitioner's 2003 document showed $1,800 of "pastors offering", about which more infra.

[9]In addition, petitioner's 2004 document showed $2,300 of "pastors offering", about which more infra.

testified that he had gotten a raise in 2003 and that was why his charitable contributions increased from $4,500 in 2002 to $7,000 in 2003. When confronted with his tax returns showing 2002 wages of $38,755 and 2003 wages of $37,900, petitioner conceded that in fact he had not gotten a raise in 2003. Petitioner did not revise his "tithe" explanation at that point or later in the trial or provide any other explanation on brief.

Petitioner testified that he made his charitable contributions each Sunday by first putting the cash into a plain white envelope and then putting the envelope into a collection plate as the plate was passed around. Petitioner provided as a corroborating witness Reverend Charles Vincent Daniels, Sr. (hereinafter sometimes referred to as Daniels), pastor of the Ebenezer Baptist Church. In his deposition (because of time constraints, Daniels was unable to testify at the trial), Daniels stated that congregants or participants in the services make their offerings by going to the front of the church and placing their offerings "in baskets on a table in the front of the church". He stated that the baskets are not passed around among the congregants or participants. Petitioner ignores this conflict in his testimony and on brief.

The documents petitioner submitted in support of his 2003 and 2004 deductions are essentially the same as the one for 2002, but there are some differences. One difference is that each of

the 2003 and 2004 documents shows a weekly "tithe" of $100 and a weekly "pastors offering" of $34 or $45 or $50, as the case may be. In his deposition Daniels states that the pastor's offering did not start until after 2005. Petitioner ignores this conflict in his testimony and on brief.

Each of the three documents is headed "IRS Tax Receipt". When asked why the documents use the word "receipt", since none of them is signed by anyone, much less by someone purporting to act on behalf of the donee Ebenezer Baptist Church, petitioner testified that he did not know. Petitioner testified that he never asked Chester about this and Chester never explained why the word "receipt" was used.

The first requirement of section 7491(a) is that the taxpayer provide credible evidence. As we noted in Higbee v. Commissioner, 116 T.C. 438, 442 (2001),

> In order for section 7491(a) to place the burden of proof on respondent, the taxpayer must first provide credible evidence. The statute itself does not state what constitutes credible evidence. The conference committee's report states as follows:
>
>> Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness). * * * [H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995.]

After critical analysis it is clear that the evidence provided by petitioner contains so many internal conflicts (i.e.,

conflicts in petitioner's evidence and not based on any rebuttal or contrary evidence presented by respondent) that we would not find it sufficient to base a decision on this matter in favor of petitioner.  Accordingly, we conclude that section 7491(a) does not apply and the burden of proof on the charitable contribution deductions issue has not been shifted to respondent.  Under the circumstances, it is not necessary to consider the other requirements imposed by section 7491(a).

2.  <u>Allowability of Deductions</u>

Respondent's disallowances of petitioner's charitable contribution deductions resulted in the unchallenged remaining itemized deductions being less than the standard deduction for each of the years in issue.  Table 8 compares petitioner's claimed itemized deductions and the standard deduction.

Table 8

|                                                                                    | 2002    | 2003    | 2004    |
| ---------------------------------------------------------------------------------- | ------- | ------- | ------- |
| Charitable contributions                                                           | $4,500  | $7,000  | $7,500  |
| Other itemized deductions                                                          | 2,878   | 1,999   | 3,731   |
| Standard deduction                                                                 | 4,700   | 4,750   | 4,850   |
| Amount by which the standard deduction exceeds the other itemized deductions       | 1,822   | 2,751   | 1,119   |

In the notices of deficiency respondent allowed the standard deduction in lieu of all of petitioner's itemized deductions for each of the years in issue.  As a result, respondent's

determinations must be sustained unless petitioner carries his burden of proving, as to any of the years in issue, that he is entitled to charitable contribution deductions greater than the amount shown for that year[10] on the last line of table 8.

For the reasons explained supra in part C.1., Burden of Proof, petitioner's documents and his testimony are largely discredited. Petitioner testified that he recorded his Sunday contributions in notebooks on Sunday afternoons, that he gave these notebooks to Chester, and that Chester used the notebooks to prepare petitioner's tax returns and also the documents (notwithstanding the above-noted conflicts between the documents and the tax returns). Petitioner did not produce any notebooks. Chester is dead. Chalamar sent a letter that does not deal with this matter.

Although petitioner may well have made deductible charitable contributions to the Ebenezer Baptist Church in each of the years in issue, we conclude that he has failed to carry his above-described burden of proving, for any of the years in issue, that his deductible contributions exceeded the amount shown on the last line of table 8. Thus, respondent's determination is sustained as to each of the years in issue. We so hold.

---

[10]For 2003 petitioner claimed an item that was subject to a 2-percent floor. As a result of other issues, that floor is greater than the amount shown on petitioner's tax return, so the allowable deduction is less than that shown and the 2003 "excess" will be greater than the amount shown in table 8.

D.  Section 6662 Penalty

For each of the years 2002 and 2004 respondent determined an accuracy-related penalty under section 6662(a) for negligence or disregard of rules or regulations.[11]

Under section 6662(a) and (b)(1), a taxpayer may be liable for a penalty of 20 percent of the portion of an underpayment of tax due to, among other things, negligence or disregard of rules or regulations.  The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  "Negligence" also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  Stovall v. Commissioner, 762 F.2d 891, 895 (11th Cir. 1985), affg. T.C. Memo. 1983-450; Higbee v. Commissioner, 116 T.C. at 449; sec. 1.6662-3(b)(1), Income Tax Regs.

The term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  Disregard of rules or regulations is "careless" if the taxpayer does not exercise reasonable diligence to determine the correctness of a return

---

[11]Respondent determined, in the alternative for 2002 and 2004, accuracy-related penalties for substantial understatement of income tax.  Our ruling on the negligence alternative for 2002 and 2004 makes it unnecessary to analyze or rule on the substantial understatement alternative.

position that is contrary to the rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs. Disregard of rules or regulations is "reckless" if the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances that demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe. Id.

Section 6664(c)(1) provides, in pertinent part, that the section 6662(a) penalty shall not be imposed with respect to any portion of an underpayment if a taxpayer shows that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Reasonable cause and good faith may be indicated by an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer. Sec. 1.6664-4(b)(1), Income Tax Regs.

Reliance on the advice of a tax professional also may establish reasonable cause and good faith for the purpose of avoiding liability for the section 6662(a) penalty. The taxpayer claiming reliance on a tax professional's advice

> must prove by a preponderance of the evidence that the taxpayer meets each requirement of the following three-prong test: (1) The adviser was a competent professional who had sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment. * * *

Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221, 233-234 (3d Cir. 2002). Reliance on a return preparer is not reasonable where "even a cursory review" of the tax return would reveal errors. Metra Chem. Corp. v. Commissioner, 88 T.C. 654, 662 (1987).

Under section 7491(c), the Commissioner has the burden of production with respect to liability for the negligence or disregard penalty. That is, the Commissioner must see to it that the record includes sufficient evidence indicating that it is appropriate to impose this penalty. Higbee v. Commissioner, 116 T.C. at 446-447. If the Commissioner satisfies this burden of production, then the taxpayer has the burden of proving that (1) the underpayment was not attributable to negligence or disregard of rules or regulations, or (2) the reasonable cause exception applies. Idem.

As we explained supra (in part C. Charitable Contributions), petitioner produced at trial documents purportedly prepared by Chester from notebooks petitioner gave to Chester memorializing his weekly contributions. The 2002 document contradicted petitioner's 2002 tax return, also prepared by Chester. See supra note 7. Petitioner's testimony as to tithing, as well as the 2002 and 2004 documents, conflicts with the gross salaries reported on his tax returns. Petitioner's testimony as to the manner in which he made the contributions conflicts with his

witness' explanation of the manner in which such contributions were made in 2002 and 2004.

Petitioner claimed a $1,500 education credit (Hope Credit) for 2002; respondent disallowed it and included the disallowed amount in the underpayment to which the negligence penalty applies. Petitioner conceded the disallowance. Petitioner testified that he did not have any idea what an education credit was at the time he filed his 2002 tax return. He testified that he had not gone to school in 2002 and had "not been in school since 1978", when he received a bachelor's degree from Cheney University. His only explanation for the claiming of the credit was that this was some accountant's manipulation of the tax code. He did not discuss the education credit with Chester. Petitioner's claim of a $1,500 education credit on his 2002 tax return is evidence of negligence.

The bulk of the adjustments and the bulk of the trial time dealt with Schedule E adjustments. Petitioner's documentary substantiation was largely a hodgepodge, with few clear receipts. Petitioner failed to keep adequate records or to substantiate properly many of the items that he claimed and has since conceded or that he disputed unsuccessfully. Such a failure in the instant cases is evidence of negligence. See Higbee v. Commissioner, 116 T.C. at 449.

Petitioner deducted in full numerous expenditures that petitioner now concedes were capital items. See, e.g., supra table 2; part B.1.(b)(4) Kitchen Renovation; and part B.3.(b)(1) Remodeling of Third Floor Apartment. As best we can tell from petitioner's evidence, it was obvious that these comparatively large deductions were for capital items not currently deductible in full.

These items cause us to conclude that respondent has carried the burden of production with respect to significant items on petitioner's 2002 and 2004 tax returns.[12]

Petitioner argues that he reasonably relied on his accountant for assistance. But petitioner did not show that Chester was a competent professional who had sufficient tax expertise to justify reliance. He testified that Chester was not a certified public accountant. We have not found anything in the record about Chester's tax expertise, except the tax returns and the other documents (such as the charitable contributions statements) that Chester prepared. Those materials do not lead us to conclude that Chester was a competent tax professional.

Petitioner also failed to show that he provided Chester with necessary and accurate information. Petitioner said he kept all

---

[12]The same analysis would lead to the same conclusion as to 2003. However, respondent did not determine an accuracy-related penalty for 2003. We leave the parties as we find them for 2003 on this issue.

of his tax documents, including receipts, in a folder during the year.  He said he then photocopied those documents and sent them to Chester, along with his Forms W-2, Wage and Tax Statement.  It is not clear whether petitioner sent the originals or the photocopies to Chester.  But, presumably, petitioner's purpose in making the photocopies was to have a complete set of his business and other tax-relevant records.  Because petitioner was able to produce so few of his records and was so vague and general in his testimony[13] we cannot tell what petitioner asked of Chester on any specific matter and what specific advice Chester gave on that matter.  As best we can tell, petitioner gave "stuff" to Chester and Chester gave tax returns (not advice) to petitioner.[14]  That is not enough reliance on professional advice to enable

---

[13]On cross-examination, petitioner testified that he photocopied and sent documents to Chester semiannually.

[14]Petitioner testified as follows:

    Q  [Petitioner's counsel]  I just want to go back for a second to the actual tax return.  I want to make sure that I understand and the Court understands the process.  After you provided all the paperwork to Mr. Muhammad, then he would prepare a tax return?

    A  [Petitioner]  That's correct.

                *    *    *    *    *    *    *

    Q  So what you are saying is that as far as you know, you submitted all of your paperwork to Mr. Muhammad and the tax returns were always prepared?

    A  That's correct.

petitioner to avoid the negligence penalty as to any portion of the underpayment for 2002 or 2004.  See <u>Neonatology Associates, P.A. v. Commissioner</u>, 299 F.3d at 233-234; <u>ASAT, Inc. v. Commissioner</u>, 108 T.C. 147, 176-178 (1997).  We so hold.

To take account of the foregoing,

<u>Decisions will be</u>

<u>entered under Rule 155</u>.