# United States Tax Court

T.C. Memo. 2025-26

GINA JAHA,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

BOB ANDERSON,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos. 2404-14, 2417-14.          Filed March 25, 2025.

————

Gina Jaha, pro se in Docket No. 2404-14.

Bob Anderson, pro se in Docket No. 2417-14.

*Peter H. Clark*, *Kim-Khanh Thi Nguyen*, and *Hans Famularo*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, *Judge*: In these consolidated cases, the Internal Revenue Service (IRS or respondent) issued separate Notices of Deficiency to petitioners, Bob Anderson and Gina Jaha, a married couple, with respect to their federal income tax for the 2005–09 taxable years (years at issue). For Mr. Anderson, the IRS determined the

[*2] following deficiencies and additions to tax under sections 6651(a)(1) and (2) and 6654:[1]

| Year | Deficiency | Additions to Tax[2] | | |
|---|---|---|---|---|
| | | § 6651(a)(1) | § 6651(a)(2) | § 6654 |
| 2005 | $13,956 | $3,140 | $3,489 | $560 |
| 2006 | 12,314 | 2,771 | 3,079 | 583 |
| 2007 | 11,204 | 2,521 | 2,801 | 510 |
| 2008 | 12,564 | 2,827 | 3,141 | 404 |
| 2009 | 7,459 | 1,678 | ([2]) | 179 |

For Ms. Jaha, the IRS determined the following deficiencies and additions to tax under sections 6651(a)(1) and (2) and 6654:

| Year | Deficiency | Additions to Tax[3] | | |
|---|---|---|---|---|
| | | § 6651(a)(1) | § 6651(a)(2) | § 6654 |
| 2005 | $4,071 | $916 | $1,018 | $163 |
| 2006 | 3,444 | 775 | 861 | 163 |
| 2007 | 3,003 | 676 | 751 | 137 |
| 2008 | 3,465 | 780 | 866 | 111 |
| 2009 | 1,731 | 389[4] | ([3]) | — |

After certain concessions by respondent,[5] the issues remaining for consideration are whether for the years at issue (1) petitioners properly elected joint filing status, and if not, whether half of Mr. Anderson's

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Some monetary amounts are rounded to the nearest dollar.

[2] The Notice of Deficiency issued to Mr. Anderson indicates that the additions to tax were computed only through a date specified therein, and that the section 6651(a)(2) addition to tax for 2009 would be computed later. The amounts determined under section 6651(a)(1) and (2) appear to have been transposed because of a clerical error. *See* § 6651(a)(1) and (2), (c)(1).

[3] The Notice of Deficiency issued to Ms. Jaha treats the computation of the section 6651(a)(1) and (2) additions to tax in the same manner as the Notice of Deficiency issued to Mr. Anderson, and the amounts of those additions to tax likewise appear to have been transposed. *See supra* note 2.

[4] Because of an apparent typographical error, the Notice of Deficiency lists the amount of this addition to tax as "389/48" instead of "389.48."

[5] On brief respondent concedes that Mr. Anderson is entitled to certain business expense deductions for the years at issue, *see infra* p. 13, one dependency exemption deduction under section 151(a) and (c) for each of the years at issue, *see infra* p. 16, and a mortgage interest deduction of $16,988 for 2005, *see infra* p. 17.

**[\*3]** income belongs to Ms. Jaha under California community property law; (2) Mr. Anderson had unreported gross receipts from his multilevel marketing business; (3) Mr. Anderson is entitled to any deductions beyond those respondent has conceded; (4) Mr. Anderson is liable for self-employment tax; and (5) petitioners are liable for the additions to tax.[6]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The Stipulation of Facts and the attached Exhibits are incorporated herein by this reference.

I. *Petitioners and Their Connections to California and Oregon*

Petitioners, who were married at all relevant times, resided in California when they timely filed their Petitions.

During the years at issue petitioners resided in an apartment in California that Mr. Anderson began renting in 2004. Mr. Anderson used one room of the apartment as an office. Ms. Jaha and petitioners' son (who was born in 2004) lived in the apartment during at least parts of each year from 2004–09, and they began living at the apartment full time in 2009 or 2010.

Before 2005 petitioners lived in Oregon, where Mr. Anderson owned a house. Mr. Anderson sold that house in 2005. Mr. Anderson regularly traveled to Oregon to care for his ailing father, and he stayed at his father's house when he did so. Mr. Anderson also held an Oregon driver's license, which indicated that it was issued to him at his father's address in 2007 and was valid until 2015.

II. *Mr. Anderson's Multilevel Marketing Business*

During the years at issue Mr. Anderson worked as an independent contractor for Mannatech, Inc. (Mannatech), a multilevel marketing firm that sold food supplements. Mr. Anderson's work involved marketing Mannatech's products to consumers, as well as recruiting and training additional "downline distributors" to do the same. He earned commissions based on his own sales and the sales made by his distributor recruits (and their recruits, and so on), such that

---

[6] Ms. Jaha did not appear at trial, but she will be bound by our resolution of the issues in these cases. *See* Rule 149(a).

[*4] he regularly earned commissions from groups of distributors stretching to as many as 30–50 levels. Mr. Anderson's largest groups of distributors were in California and Oregon, and he traveled regularly between those states to participate in meetings that were helpful in recruiting additional distributors.

Instead of receiving payments directly from Mannatech, Mr. Anderson arranged to have his commissions for 2005 and 2006 paid to a trust on his behalf. He understood that other Mannatech distributors had made similar arrangements in an effort to shield their earnings from potential lawsuits and to reduce their federal income tax liabilities. In May 2007 Mr. Anderson directed Mannatech to transfer his "position" to a newly formed Oregon corporation, Redefining Wellness, Inc. (Redefining Wellness), of which he was the sole shareholder. Mannatech thereafter paid Mr. Anderson's commissions to Redefining Wellness instead of the trust.

III.    *The IRS's Examination*

Petitioners did not timely file Forms 1040, U.S. Individual Income Tax Return, for the years at issue,[7] and the IRS eventually assigned a revenue agent (RA) to examine petitioners' income tax liabilities for those years. Petitioners retained Anthony Aulisio, Jr., a certified public accountant, to represent them in the examination.

The RA scheduled an initial meeting with petitioners and Mr. Aulisio. At that meeting, Mr. Anderson told the RA that he had lost most of his tax records as a result of moving three times in the prior six years. The RA memorialized Mr. Anderson's explanation for the loss of his records in written notes composed the day after the meeting, which he prepared in the ordinary course of business as part of the examination file.

Following the meeting, Mr. Aulisio prepared Forms 1040 for 2005 and 2006, which petitioners signed. The returns listed the address of petitioners' California apartment and indicated that they wished to elect married filing jointly as their filing status. The returns also included Schedules C, Profit or Loss From Business, reporting gross receipts for a business activity, identified as "Marketing" under the business name "Man[n]atech," of $86,883 and $78,011 for 2005 and 2006, respectively. Mr. Aulisio faxed copies of the returns to the RA, who reviewed them

---

[7] Nor did petitioners file a Form 1040 for the preceding taxable year, 2004.

**[\*5]** and requested evidence substantiating expenses reported on the Schedules C. The RA, however, never received such evidence. Nor did the RA receive petitioners' original 2005 and 2006 returns, and consequently he never forwarded those returns for filing.

Instead, the RA prepared substitutes for returns (SFRs) for the years at issue for each petitioner,[8] *see* § 6020(b), and then issued a Notice of Deficiency to each of them. The Notices of Deficiency reflect the IRS's determinations that (1) each petitioner's filing status for the years at issue is married, filing separately; (2) half of Mr. Anderson's gross income for the years at issue is allocable to Ms. Jaha as community property under California law; (3) Mr. Anderson had Schedule C gross receipts of $75,588, $67,870, $62,767, $69,543, and $47,132 for 2005–09, respectively; (4) Mr. Anderson is subject to self-employment tax under section 1401 for the years at issue; and (5) petitioners are liable for additions to tax under sections 6651(a)(1) and (2) and 6654. To determine the amounts of Mr. Anderson's gross receipts, the RA relied on Forms 1099–MISC, Miscellaneous Income, that Mannatech issued to the trust and Redefining Wellness, Mannatech's internal payment records, and discussions with Mr. Aulisio. The RA received the Forms 1099–MISC and Mannatech's internal payment records in response to a summons, and thereafter he incorporated those documents in the examination file.

After the IRS issued the Notices of Deficiency, Mr. Aulisio also prepared Forms 1040 for 2007–09, which petitioners signed. Mr. Aulisio submitted the 2007–09 returns to an employee in the IRS's Office of Appeals, but they were never forwarded for filing. The returns listed the address of petitioners' California apartment and indicated that they wished to elect married filing jointly as their filing status. They also included Schedules C reporting gross receipts for a business activity, identified as "Marketing" under the business name "Man[n]atech," of $62,767, $69,543, and $47,132 for 2007–09, respectively. The copies of the returns in the record also include documents relating to California state income tax returns.

---

[8] The record includes copies of all the SFRs except the one prepared for Ms. Jaha for 2008.

**[\*6]**                                          OPINION

I.      *Burden of Proof*

As a preliminary matter, we address who has the burden of proof with respect to the various issues in these cases.

In general, the Commissioner's determinations set forth in a Notice of Deficiency are presumed correct, and the taxpayer bears the burden of proving otherwise. *See* Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). However, in unreported income cases such as these, the Commissioner must establish "some evidentiary foundation" connecting the taxpayer with the income-producing activity or demonstrating that the taxpayer actually received unreported income. *See Weimerskirch v. Commissioner*, 596 F.2d 358, 361–62 (9th Cir. 1979), *rev'g* 67 T.C. 672 (1977); *Walquist v. Commissioner*, 152 T.C. 61, 67–68 (2019); *see also Edwards v. Commissioner*, 680 F.2d 1268, 1270–71 (9th Cir. 1982) (per curiam) (holding that the Commissioner's assertion of a deficiency is presumptively correct once some substantive evidence is introduced demonstrating that the taxpayer received unreported income). The requisite evidentiary foundation is minimal and need not include direct evidence. *See Banister v. Commissioner*, T.C. Memo. 2008-201, slip op. at 4, *aff'd*, 418 F. App'x 637 (9th Cir. 2011). If the Commissioner introduces some evidence that the taxpayer received unreported income, the burden shifts to the taxpayer, who must establish by a preponderance of the evidence that the determination was arbitrary or erroneous. *See Hardy v. Commissioner*, 181 F.3d 1002, 1004 (9th Cir. 1999), *aff'g* T.C. Memo. 1997-97. The record clearly shows that Mr. Anderson had an active and income-producing multilevel marketing business, and thus we are satisfied that respondent has met his initial evidentiary burden with respect to the gross receipts attributable to that business.

Tax deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *Segel v. Commissioner*, 89 T.C. 816, 842 (1987). As relevant here, this burden requires the taxpayer to demonstrate that the claimed deductions are allowable pursuant to some statutory provision and to substantiate the expenses giving rise to the claimed deductions by maintaining and producing adequate records that enable the Commissioner to determine the taxpayer's correct liability. § 6001; *Higbee v. Commissioner*, 116 T.C. 438, 440 (2001).

**[\*7]**    Petitioners contend that the burden of proof should shift to respondent under section 7491(a) or (b) with respect to certain factual issues underlying the IRS's determinations that Mr. Anderson had unreported income for the years at issue that should be treated as petitioners' community property under California law.  The record does not establish, however, that the applicable conditions for shifting the burden of proof as to those factual issues have been satisfied.  *See, e.g.*, *Rogers v. Commissioner*, T.C. Memo. 2014-141, at \*16–17, *aff'd*, No. 15-3678, 2016 U.S. App. LEXIS 23759 (7th Cir. Nov. 3, 2016).

The Commissioner bears the burden of production with respect to the additions to tax under sections 6651 and 6654, *see* § 7491(c), but the taxpayer bears the burden of proving that the Commissioner's determinations with respect to the additions to tax should not be sustained, *see Wheeler v. Commissioner*, 127 T.C. 200, 207–08 (2006), *aff'd*, 521 F.3d 1289 (10th Cir. 2008).

II.    *Petitioners' Filing Status*

Turning to the merits of these cases, we first consider the IRS's determinations that each petitioner's correct filing status for the years at issue is married, filing separately.  Although petitioners challenged those determinations in their Petitions by alleging that their correct filing status is married, filing jointly, they have withdrawn their challenges on brief and now deny that they properly elected joint filing status.  Respondent, however, purports to concede on brief that petitioners are entitled to joint filing status.

Married taxpayers generally may elect to file a joint return for a taxable year although their right to do so may be limited after either spouse has filed a separate return.  *See* § 6013(a) and (b).  After the filing of a separate return, a joint filing status election is generally prohibited if either spouse has timely filed a petition for redetermination of a deficiency.  § 6013(b)(2)(B).  Nevertheless, where, as here, the return electing separate filing status is an SFR filed by the IRS, the taxpayer may still elect joint filing status by filing a joint return with his or her spouse before the case is submitted for decision.  *See Millsap v. Commissioner*, 91 T.C. 926, 937 (1988); *see also Scherping v. Commissioner*, T.C. Memo. 1989-678, 1989 Tax Ct. Memo LEXIS 678, at \*25 (holding that taxpayers "did not properly elect joint filing status for the years at issue because they failed to elect by the only permissible method, i.e., filing joint income tax returns" before submission of the case).

[*8]   A return is deemed filed only if it has been submitted in the manner specified by regulation, or if it is at least eventually received by the appropriate person or office. *Seaview Trading, LLC v. Commissioner*, 62 F.4th 1131, 1134–35 (9th Cir. 2023), *aff'g en banc* T.C. Memo. 2019-122. Individual income tax returns generally must be filed with an assigned person in the taxpayer's local IRS office or with a designated service center. Treas. Reg. § 1.6091-2(a)(1), (c), (d). Submitting a return to an IRS employee who has not been assigned to receive it, such as a revenue agent or respondent's counsel, is generally insufficient. *See Seaview Trading, LLC v. Commissioner*, 62 F.4th at 1134–35.

The record fails to establish that petitioners properly elected joint filing status. No party contends that petitioners filed their returns for the years at issue in the manner specified by regulation, that any of the IRS's employees forwarded them to the appropriate person or office for filing, or that the IRS actually filed any of the returns. Accordingly, we cannot conclude that petitioners properly elected to change their filing status for the years at issue, and we sustain the IRS's determination in the Notices of Deficiency that each petitioner's correct filing status is married, filing separately.

III.   *Community Property*

In the absence of joint returns, petitioners contend that Ms. Jaha had no income for the years at issue because she was not domiciled in California and, therefore, was not required to treat half of Mr. Anderson's income as hers under California community property law.

Married taxpayers who do not file joint returns are generally each liable for federal income tax on half of their community property income for a taxable year. *See United States v. Mitchell*, 403 U.S. 190, 196–97 (1971). Whether a taxpayer's income constitutes community property is determined under the law of the jurisdiction where its earner is domiciled. *Owens v. Commissioner*, 26 T.C. 77, 88–89 (1956); *Kamikido v. Commissioner*, T.C. Memo. 1979-402. The income earner's domicile, rather than his or her place of temporary residence, controls. *Whitmore v. Commissioner*, 25 T.C. 293, 296–97 (1955); *Webb v. Commissioner*, T.C. Memo. 1996-550. Under California law, "[e]xcept as otherwise provided by statute, all property . . . acquired by a married person during the marriage while domiciled in [California] is community property." Cal. Fam. Code § 760 (West, Westlaw through 2024 Reg. Sess. ch. 1002). The community property character of Mr. Anderson's

[*9] income thus turns on whether he, not Ms. Jaha, was domiciled in California during the years at issue.

The place of an individual's domicile is primarily a question of fact. *Niki v. United States*, 484 F.2d 95, 95 (9th Cir. 1973) (per curiam); *Kamikido*, T.C. Memo. 1979-402. "Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile." *Texas v. Florida*, 306 U.S. 398, 424 (1939). Although we may consider an individual's statements of intent with respect to his or her domicile, such statements are entitled to slight weight when they conflict with the individual's actions. *See id.* at 425. Factors relevant to an individual's intent include the locations of his or her birth, residence, family, employment, voting, property, and community involvement. *See Kamikido*, T.C. Memo. 1979-402. We have also given weight to the address shown on a taxpayer's income tax return. *See Whitmore*, 25 T.C. at 297–98. An individual may not "elect to make his home in one place in point of interest and attachment and for the general purposes of life, and in another, where he in fact had no residence, for the purpose of taxation." *Texas*, 306 U.S. at 426.

Mr. Anderson's statements relating to his residence and intent were equivocal, and often appeared calculated to avoid revealing the full extent of his attachment to California during the years at issue. He testified that he began renting the California apartment in 2004 and sold his former Oregon home in 2005. He explained that he had been traveling to California even before 2004, and decided to rent the apartment, part of which he used as an office, because of the growth of his business in the state. He also testified that his wife and his son, who was born in 2004, stayed with him at the apartment.

When asked to specify when he moved to California, Mr. Anderson said that he "probably" had not "officially" moved there even by the time of trial, noting that he still traveled to Oregon, maintained his car registration and driver's license there, and had an ailing father there. He also declined to admit that Ms. Jaha resided in California any earlier than 2009 or 2010, when his son started school, by which time he admitted that Ms. Jaha was living in California "full time." But when asked whether he had previously told the RA, under oath, that he resided in California during the years at issue, Mr. Anderson admitted that he "very well may have" and that he was in California "more and more" during those years, even though he also claimed to have been "back and forth minimally half the time." Tellingly, when the Court gave him the opportunity to state plainly where he claimed to reside,

**[*10]** Mr. Anderson did not answer directly and instead said that he "intend[ed] fully to move back to Oregon" once he determined whether a new business venture would succeed.

Although Mr. Anderson's testimony indicates that he retained some degree of connection to Oregon and hoped to return there someday, the other evidence bearing on his residence and intent confirms that Oregon was no longer his home by 2005. The RA credibly testified that petitioners told him that they lived in California during the years at issue and did not own real property in Oregon or elsewhere after 2005. What little documentary evidence the record contains of Mr. Anderson's travel during the years at issue consists of receipts for airline trips departing from and returning to California, not Oregon. Moreover, there is no indication that Mr. Anderson maintained a permanent residence in Oregon after selling his house. His testimony indicated, for example, that he used his father's Oregon address simply as a matter of convenience when he wanted things sent to Oregon instead of California. For matters of importance, such as his income tax returns, he used the address of his California residence. By contrast, Mr. Anderson admitted that he never used his father's address on a tax return. And while some of the federal income tax returns in the record are accompanied by copies of documents relating to California state income taxes, there are no similar documents relating to Oregon state income taxes.

On balance, considering the duration of Mr. Anderson's connections to California, which began even before he established a residence there, along with his significant business connections in the state, the presence there with him of his wife and his son, the degree of attachment to California illustrated by his tax and travel documents, his lack of a permanent residence elsewhere, and his decision to remain in California to start a new business venture of indefinite duration, we are persuaded that Mr. Anderson established his residence in California and formed an intent to remain there no later than 2005. We therefore conclude that half of his income for the years at issue is allocable to Ms. Jaha as community property under California law.

IV. *Unreported Gross Receipts*

Turning to the disputed gross receipts for the years at issue, we conclude that Mr. Anderson's multilevel marketing business generated gross receipts in the amounts the IRS determined.

**[\*11]** Mr. Anderson admitted at trial that he earned income as an independent contractor for Mannatech that was paid to the trust and to Redefining Wellness and that he signed income tax returns for the years at issue reporting Schedule C gross receipts in amounts equal to or greater than the amounts the IRS determined in the relevant Notice of Deficiency. A taxpayer's reporting of gross receipts in a signed return submitted to the IRS is an admission that the taxpayer received the amount reported, even where (as here) the IRS does not ultimately accept the return for filing. *See Aulisio v. Commissioner*, T.C. Memo. 2024-29, at \*13. Such an admission can be overcome only by cogent evidence. *See Estate of Hall v. Commissioner*, 92 T.C. 312, 337–38 (1989).

Mr. Anderson now attempts to retreat from his admissions by arguing that (1) the RA improperly reconstructed his gross receipts for 2005 and 2006 using the source and application of funds method without adequately accounting for business expenses he incurred and (2) he did not actually have any gross receipts for the years at issue because his commissions were paid to the trust and Redefining Wellness rather than directly to him. Those arguments are unpersuasive and inconsistent with the evidence.

Where a taxpayer fails to keep books and records sufficient for the Commissioner to determine his or her correct tax liabilities, or if those records do not clearly reflect income, the Commissioner may reconstruct the taxpayer's income using a method that clearly reflects the full amount received. *Petzoldt v. Commissioner*, 92 T.C. 661, 686–87 (1989). The method used need only be reasonable under all the facts and circumstances. *Id.* at 687.

While it is true that improperly accounting for disallowed expense deductions may introduce error into a reconstruction of income under the source and application of funds method, which involves comparing known cash expenditures with known receipts, *see Cheesman v. Commissioner*, T.C. Memo. 1994-509, there is no indication that the RA used that method here. Instead, the RA credibly testified that he estimated Mr. Anderson's gross receipts for 2005 and 2006 as 58% of the amounts reflected on the Forms 1099–MISC that Mannatech issued to the trust for those years. He explained, consistently with the amounts reflected in the relevant Notice of Deficiency and the underlying documents from the examination file, that he derived that percentage from Mr. Aulisio's representations concerning the extent to which some

[*12] or all of the commissions paid to the trust in 2005–07 may have belonged to Mannatech distributors other than Mr. Anderson.

The RA's testimony conflicted with Mr. Aulisio's testimony concerning whether they agreed on the best method for estimating Mr. Anderson's 2005 and 2006 gross receipts. But even if we accept Mr. Aulisio's testimony at face value, it proves at most that he believed the RA's approach *understated* the gross receipts in question and that it was Mr. Aulisio (rather than the RA) who thought Mr. Anderson must have generated even more gross receipts because of the expenses he incurred. The RA, however, never accepted the figures shown in the returns that Mr. Aulisio prepared and never received substantiation for the expenses reported therein. Under these circumstances, we see no basis for concluding that the RA's estimates were unreasonable or that there is sufficient evidence to overcome Mr. Anderson's admissions in the 2005 and 2006 returns that his gross receipts were not less than the amounts the RA determined.

Mr. Anderson's broader claim that none of the payments to the trust and Redefining Wellness are includible in his gross receipts is inconsistent with his admissions in both the returns for the years at issue and his trial testimony. In any event, a taxpayer may not exclude an economic gain from his or her income by assigning it in advance to another party. *Lucas v. Earl*, 281 U.S. 111, 114–15 (1930). In cases where compensation for personal services performed by an individual is paid to a corporation wholly owned by that individual, or to a trust, we look to who controlled the earning of the income to determine who truly earned it. *See Johnson v. Commissioner*, 78 T.C. 882, 891 & n.15 (1982), *aff'd*, 734 F.2d 20 (9th Cir. 1984) (unpublished table decision); *Am. Sav. Bank v. Commissioner*, 56 T.C. 828, 839 (1971). The record does not include employment agreements, contracts, or other evidence sufficient to establish that the trust or Redefining Wellness had sufficient control over Mr. Anderson's performance of services in his multilevel marketing business to support a conclusion that one of those entities, rather than Mr. Anderson, earned the gross receipts in question. *See Leavell v. Commissioner*, 104 T.C. 140, 155–59 (1995) (attributing income to individual taxpayer where facts and circumstances did not establish he was an employee of his personal service corporation); *Wesenberg v. Commissioner*, 69 T.C. 1005, 1010–11 (1978) (holding conveyance of income to a trust ineffective where trust did not control taxpayer's earning of income).

**[\*13]** Accordingly, we sustain the IRS's determinations that Mr. Anderson had unreported gross receipts for the years at issue in the amounts determined in the relevant Notice of Deficiency.

V.  *Deductions*

A.  *Ordinary and Necessary Business Expenses*

Although the IRS determined in the relevant Notice of Deficiency that Mr. Anderson was not entitled to any deductions for expenses incurred in connection with his multilevel marketing business, respondent now concedes that Mr. Anderson is entitled to deduct the following amounts: (1) "downline incentive" expenses of $1,900, $1,900, $1,804, $2,046, and $1,978 for 2005–09, respectively; (2) office utility expenses of $600 for each year at issue; and (3) travel expenses of $1,584 for 2007.  Mr. Anderson contends that he is entitled to deduct the following additional expenses: (1) expenses for travel and traveling away from home, including all rent paid for the California apartment for the years at issue, totaling roughly $40,000 per year; (2) telephone expenses ranging from approximately $1,700 to $9,000 per year; and (3) "office/leads/promotion" expenses of $1,563 per year.

Section 162 allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during a taxable year in carrying on a trade or business.  § 162(a); Treas. Reg. § 1.162-1(a).  Generally, if a taxpayer demonstrates that he or she has actually incurred a deductible expense but is unable to adequately substantiate the amount, the Court should estimate the amount and allow a deduction to that extent.  *Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930).  To allow a deduction under the *Cohan* rule, however, we must have some reasonable basis on which to estimate the amount of the expense.  *Norgaard v. Commissioner*, 939 F.2d 874, 879 (9th Cir. 1991), *aff'g in part, rev'g in part* T.C. Memo. 1989-390; *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985).

But section 274 supersedes the *Cohan* rule for certain expenses, which may not be estimated and are instead subject to strict substantiation requirements.  *See* § 274(d); *Sanford v. Commissioner*, 50 T.C. 823, 827–28 (1968), *aff'd per curiam*, 412 F.2d 201 (2d Cir. 1969); Temp. Treas. Reg. § 1.274-5T(a).  The strict substantiation requirements apply to travel expenses, including meals and lodging while away from home, and expenses relating to "listed property," including passenger

[*14] automobiles and cellular telephones.[9]   §§ 274(d), 280F(d)(4)(A);
Temp. Treas. Reg. § 1.274-5T(a); *see also Boyd v. Commissioner*, 122 T.C.
305, 320 (2004).  A taxpayer generally must substantiate such expenses
with adequate records, or by sufficient evidence corroborating the
taxpayer's own statement, establishing (1) the amount of the expense;
(2) the time and place it was incurred; and (3) its business purpose.
*Balyan v. Commissioner*, T.C. Memo. 2017-140, at *7; Temp. Treas. Reg.
§ 1.274-5T(b).

Substantiation by adequate records requires the taxpayer to
maintain (1) an account book, diary, log, statement of expense, trip
sheet, or similar record prepared contemporaneously with the
expenditure and (2) documentary evidence, such as receipts or paid bills,
which together establish each element of an expenditure.  *Balyan*, T.C.
Memo. 2017-140, at *8; Treas. Reg. § 1.274-5(c)(2)(iii); Temp. Treas. Reg.
§ 1.274-5T(c)(2).  In the absence of such records, a taxpayer may offer a
reasonable reconstruction of the expenditures, but only after proving
that he or she once possessed adequate records that were lost to fire,
flood, or other casualty.  *See Boyd*, 122 T.C. at 320–21; *Gizzi v.
Commissioner*, 65 T.C. 342, 345 (1975); Temp. Treas. Reg. § 1.274-
5T(c)(5).  A reconstruction of a taxpayer's expenditures still must
establish all elements of each expense as required under section 274 and
the regulations.  *See Boyd*, 122 T.C. at 320–21; *Colvin v. Commissioner*,
T.C. Memo. 2012-26, slip op. at 19.

Mr. Anderson's attempt to substantiate his business expenses
rests on a one-page table reflecting general estimates of the amounts
expended in each category for each year at issue.  Mr. Aulisio testified
that he prepared the table during the IRS's examination and that the
estimates therein primarily reflect extrapolations from a handful of
airline receipts for travel that took place in 2007, along with hundreds
of other receipts that did not directly document the claimed expenses,
but which he used to estimate how many days petitioners spent in
California in 2007 and 2008.  Mr. Anderson's testimony offered little
additional information about his business expenditures beyond generic
assertions that almost all of his expenses during the years at issue
related to his business and that he traveled regularly for business
purposes.  He nevertheless urges us to accept the estimates reflected in

---

[9] Congress removed cellular telephones and similar communications
equipment from the definition of listed property for taxable years beginning after
December 31, 2009.  *See* Small Business Jobs Act of 2010, Pub. L. No. 111-240, § 2043,
124 Stat. 2504, 2560.

[*15] the table pursuant to the *Cohan* rule or, alternatively, as a reasonable reconstruction of any expenditures subject to the section 274 strict substantiation requirements.

To the extent that Mr. Anderson's reported expenditures are subject to section 274, he has failed to establish that we may accept a reconstruction of his expenses. The evidence supporting Mr. Anderson's contention that he once possessed adequate records, until a business associate disposed of them around 2010, is simply not credible. His testimony to that effect is inconsistent with his own prior statement to the RA indicating that he merely lost his records while moving. And his attempt to buttress his testimony by producing a copy of an email that, in his telling, reflects his former office manager's description of the circumstances surrounding the loss of his records, only further undermines his credibility. That email was sent *from* Mr. Anderson's own email account, years after the events in question, and may never have been seen by the purported recipient. It reflects no more than an unpersuasive, self-serving statement drafted by Mr. Anderson himself to explain away his lack of adequate records. *See Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986) (stating that we are not bound to accept a taxpayer's self-serving testimony).

In any event, Mr. Anderson's reconstruction of his expenditures is insufficient to substantiate any expenditure subject to the section 274 strict substantiation requirements. For the travel-related expense categories, for example, Mr. Anderson has not produced sufficient information to establish the dates or business purpose of any specific trip.[10] *See Colvin*, T.C. Memo. 2012-26. Furthermore, to whatever degree the claimed expenses might not be subject to the strict substantiation requirements, Mr. Anderson has not produced sufficient information on which we could base a *Cohan* estimate. He has not explained, for example, what types of expenses he categorized as "office/leads/promotion" or identified any specific documentation of those expenditures. Under these circumstances, any estimate would amount to "unguided largesse." *See Norgaard v. Commissioner*, 939 F.2d at 879 (quoting *Williams v. United States*, 245 F.2d 559, 560 (5th Cir. 1957)).

---

[10] To the extent Mr. Anderson seeks to deduct rent paid for the California apartment, he is also precluded from doing so by section 280A(a), which generally disallows any otherwise allowable deduction relating to the use of a taxpayer's residence. Mr. Anderson does not contend that his use of the apartment qualifies for any exception, such as the business use exception under section 280A(c)(1), nor is there sufficient evidence in the record to establish that one applies. *See Hamacher v. Commissioner*, 94 T.C. 348, 353–54 (1990).

[*16] We have no obligation to sift through the receipts in the record to determine whether any of them might support Mr. Anderson's general estimates. *See, e.g.*, *Hale v. Commissioner*, T.C. Memo. 2010-229, slip op. at 6.

We therefore conclude that Mr. Anderson is not entitled to any deductions for business expenses in excess of the amounts respondent has conceded.

### B. *Self-Employed Health Insurance Expenses*

Mr. Anderson also contends that he is entitled to deduct self-employed health insurance expenses paid in 2005 and 2006. *See* § 162(*l*). However, Mr. Anderson has not established the amounts of those expenses, and he cites no evidence on which we could base an estimate under the *Cohan* rule. We therefore conclude that he is not entitled to any deduction for health insurance expenses. *See Larkin v. Commissioner*, T.C. Memo. 2020-70, at *57, *aff'd per curiam*, No. 21-1103, 2022 U.S. App. LEXIS 8911 (D.C. Cir. Apr. 1, 2022).

### C. *Second Dependency Exemption Deduction for 2009*

Mr. Anderson further contends that he is entitled to claim two dependency exemption deductions for 2009. Respondent concedes that Mr. Anderson may claim one such deduction for that year, but disputes his entitlement to a second deduction.

Section 151(a) and (c) allows a deduction for an "exemption amount for each individual who is a dependent (as defined in section 152) of the taxpayer for the taxable year." A "dependent" is defined as either a "qualifying child," *see* § 152(a)(1), (c), or a "qualifying relative," *see* § 152(a)(2), (d), of the taxpayer. This definition is disjunctive, so a taxpayer may claim a deduction for an individual who meets the requirements applicable to either a qualifying child or a qualifying relative. *Sheikh v. Commissioner*, T.C. Memo. 2010-33, slip op. at 5. Those requirements include, with respect to a qualifying child, that the individual must have had the same principal place of abode as the taxpayer for more than half of the taxable year. § 152(c)(1)(B). For an individual to be a qualifying relative, the taxpayer must have provided over half of the individual's support for the year, and the individual must not be a qualifying child of any taxpayer. § 152(d)(1)(C) and (D).

Mr. Anderson testified that he had one child during the years at issue, but he cites no evidence proving that he had a second child or, if

**[\*17]** he did, whether that child was a qualifying child or a qualifying relative under the relevant requirements. We therefore conclude that Mr. Anderson is entitled to only one dependency exemption deduction for 2009.

### D. *Property Tax Expense*

The parties' final dispute relating to deductions concerns whether Mr. Anderson may deduct property tax of $2,600 paid for 2005. *See* § 164(a)(1). Respondent contends that Mr. Anderson has not shown that he paid property tax in that year although respondent concedes that he did pay mortgage interest.

In view of respondent's concession with respect to mortgage interest, we are persuaded that Mr. Anderson also paid property tax in 2005. Bearing heavily against Mr. Anderson, "whose inexactitude is of his own making," *see Cohan v. Commissioner*, 39 F.2d at 543–44, we conclude that his property tax expense for 2005 was $650.

## VI. *Self-Employment Tax*

In his Petition, Mr. Anderson assigned error to the IRS's determinations that he is liable for self-employment tax with respect to the income earned through his multilevel marketing business for the years at issue. *See* §§ 1401, 1402. Petitioners do not press this issue on brief, and we deem it abandoned. *See Davis v. Commissioner*, 119 T.C. 1, 1 n.1 (2002). Accordingly, we sustain the IRS's determinations concerning Mr. Anderson's liability for self-employment tax.

## VII. *Additions to Tax*

Finally, petitioners contend that the IRS erred in determining that they are liable for additions to tax under sections 6651(a)(1) and (2) and 6654. As indicated *supra* p. 7, the Commissioner bears the burden of production with respect to an addition to tax that an individual taxpayer has contested in his or her petition. *See* § 7491(c); *Funk v. Commissioner*, 123 T.C. 213, 216–18 (2004). To satisfy that burden, the Commissioner must offer sufficient evidence to indicate that imposing the addition to tax is appropriate. *Higbee*, 116 T.C. at 446.

Section 6651(a)(1) authorizes the imposition of an addition to tax if a taxpayer fails to file his or her income tax return by the due date (including any extension of time for filing). To carry the burden of production with respect to an addition to tax under section 6651(a)(1),

[*18] the Commissioner must introduce evidence showing that the taxpayer did not file a return by the due date. *See Wheeler*, 127 T.C. at 207–08. Section 6651(a)(2) imposes an addition to tax for failure to pay timely the amount of tax shown as due on a return. To carry the burden of production with respect to an addition to tax under section 6651(a)(2), the Commissioner must produce evidence that a return, or a substitute therefor, was filed showing the tax liability for the relevant year. *See Wheeler*, 127 T.C. at 210. If the Commissioner satisfies his burden of production, the taxpayer bears the burden of proving the failure to timely file or pay was due to reasonable cause and not willful neglect. *Higbee*, 116 T.C. at 446–47; *see also* § 6651(a)(1) and (2).

The record establishes that petitioners failed to file income tax returns for the years at issue by their due dates, *see* §§ 6072(a), 6081(a), and that the IRS consequently filed SFRs on their behalf. Respondent produced copies of the SFRs showing Mr. Anderson's tax liability for each of the years at issue. Respondent also produced copies of the SFRs showing Ms. Jaha's tax liability for each of the years at issue except 2008. Accordingly, respondent has satisfied the burden of production with respect to the section 6651(a)(1) and (2) additions to tax, except for the section 6651(a)(2) addition to tax determined against Ms. Jaha for 2008.

Petitioners do not contend on brief that their failures to file returns or pay the tax due were due to reasonable cause and not willful neglect, and we therefore deem any such argument abandoned. *See Davis*, 119 T.C. at 1 n.1. Accordingly, we sustain the IRS's determinations that petitioners are liable for additions to tax under section 6651(a)(1) and (2), except that we do not sustain the addition to tax determined against Ms. Jaha under section 6651(a)(2) for 2008. We expect that the parties will make appropriate adjustments to the amounts of those additions to tax in their Rule 155 computations. *See supra* notes 2 and 3.

Section 6654 imposes an addition to tax if an individual taxpayer underpays at least one of four required installments of estimated tax. § 6654(a), (b), and (c). Each required installment is equal to 25% of the "required annual payment," which is generally calculated as the lesser of (1) 90% of the tax shown on the taxpayer's return for the taxable year (or, if the taxpayer did not file a return, 90% of the tax due for the year), or (2) 100% of the tax shown on the taxpayer's return for the preceding taxable year. § 6654(d)(1). To satisfy the burden of production for an addition to tax under section 6654, the Commissioner must produce

**[\*19]** sufficient evidence to establish whether the taxpayer had a required annual payment, including whether the taxpayer filed a return for the preceding taxable year and, if so, the amount of tax shown on that return. *Wheeler*, 127 T.C. at 211–12. For purposes of determining whether a taxpayer had a required annual payment, an SFR is not treated as the taxpayer's return. *Duma v. Commissioner*, T.C. Memo. 2009-304, slip op. at 18 n.6.

Respondent has produced sufficient evidence to establish that petitioners did not file returns for 2004, which was the year preceding the first year at issue, or for any of the years at issue. Each petitioner's required annual payment for each of the years at issue was thus 90% of the tax due for such year, and respondent has satisfied the burden of production for the section 6654 additions to tax. Petitioners do not contend, and the record does not establish, that any statutory exception to those additions to tax applies. *See* § 6654(e). Accordingly, we sustain the section 6654 additions to tax as determined in the Notices of Deficiency.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*